## Moore *v.* Lincoln Park and Steamboat Consolidated Company.

*Appeals—Interlocutory order.*

An order sustaining in part exceptions to an auditor's report, and referring the matter back to the auditor, is an interlocutory and not a final order.

*Ships and shipping—Enrollment—Mortgage—Corporation.*

A corporation may enroll a ship which it owns in a port in which it transacts its business, although such port is not the home port of the corporation, and a mortgage on the ship enrolled in the same port in which the ship is enrolled, will give a valid lien upon the ship.

*Receivers—Compensation—Counsel fees—Steamships.*

Where receivers of a steamship company sell vessels of the company upon which maritime liens have been fixed prior to the receivership, they cannot diminish the fund due to the owners of such liens by retaining an allowance for receivers' commissions and counsel fees. For such allowances they must look to the other property of the company.

*Maritime liens—Supplies and repairs—Credit of owner—Contract.*

A maritime lien for repairs and supplies to a vessel cannot be acquired where it appears that the repairs and supplies were furnished upon the credit of the owners, and not of the vessel.

Argued Jan. 26, 1900. Appeals, Nos. 395, 400, 415 and 416, January T., 1899, by George McGowan and Bernard Gilpin, Receivers, Morris and Mathis, Equitable Trust Company and Pains Pyro-Spectacle Company, from decree of C. P. No. 4, Phila. Co., June T., 1896, No. 1180, on exceptions to auditor's report in case of Hugh C. Moore v. Lincoln Park and Steamboat Consolidated Company. Before McCollum, Mitchell, Fell, Brown and Mestrezat, JJ. Affirmed.

Exceptions to report of Horn R. Kneass, Esq., auditor.

The facts appear by the opinion of Arnold, P. J., which was as follows:

The Lincoln Park and Steamboat Consolidated Company was incorporated January 15, 1891, under the laws of the state of New Jersey, its principal office and place of business being at Lincoln park, Greenwich township, Gloucester county, New Jersey. Lincoln park is located in the United States customs collection district of Bridgeton, New Jersey. The company was registered in Pennsylvania, and had an office in Philadelphia. Its business was the establishment of a park and pleasure grounds, and the owning, leasing and running of steamboats to carry passengers from Philadelphia to the park on the Delaware river in New Jersey.

On July 21, 1896, the Pains Pyro-Spectacle Company issued a writ of foreign attachment out of this court against the Lincoln Park and Steamboat Consolidated Company, by virtue of which the sheriff attached the steamboats Chauncey Vibbard and Georgeanna, on which judgment for $7,573.30 was entered on February 15, 1897. In the mean time, to wit: on July 24, 1896, a bill was filed in this court by Hugh C. Moore against

the Lincoln Park and Steamboat Consolidated Company, alleging the insolvency of the said company and praying for the appointment of receivers, whereupon this court, the same day, July 24, 1896, issued an injunction against the officers of the company, restraining them from further continuing the business of the company or interfering with its property, and appointed George McGowan and Bernard Gilpin receivers of the property, real and personal of the said company. An ancillary receivership was appointed in the state of New Jersey consisting of Messrs. McGowan and Gilpin, with a resident of the state of New Jersey, as required by the laws of the state. Upon the appointment of the receivers they took the steamboats out of the custody of the sheriff, and proceeded to operate them during the summer season, carrying on the business of the Lincoln Park and Steamboat Consolidated Company the same as before the attachment and receivership. No order of court was made authorizing the receivers to do this, but it appears to have been done on some agreement between them and the sheriff. After the summer season had closed, to wit: on October 17, 1896, the sheriff presented his petition to the court alleging that the steamboats were chargeable and perishable, and asking for an order to sell the boats. The auditor reports on page 54 of his report that "there was considerable trouble in procuring the consent of the sheriff to the receivers selling the boats" all of which was unnecessary as the sheriff was the proper party to make the sale. After considerable delay and very large expenses had been incurred, the Georgeanna was sold for $8,300, and the Vibbard for $6,300, making a total of $14,600, out of which was deducted the auctioneer's bill for advertising and commissions amounting to $1,270.23, thus leaving a balance of $13,329.77, for distribution amongst the creditors.

An auditor having been appointed to distribute the fund, various creditors appeared before him, among them being the Equitable Trust Company, trustee for bondholders under two mortgages, one for $70,000 and the other for $49,500, upon all the property, real and personal of the Lincoln Park and Steamboat Consolidated Company. Claims were also presented for certain maritime liens for repairs to the boats, seamen's wages and supplies, as well as the claim of the plaintiff in the foreign attachment before mentioned.

In the distribution of the fund of $14,600 the auditor has allowed to the auctioneers for commissions, advertising, etc., $1,270.23 ; to the sheriff, for his costs in the foreign attachment suit, $506 ; to the receivers, $1,000 each; to their counsel, $500 each ; for stenographic notes of testimony, $529.60 ; for auditor's fee, $1,500 ; to the bondsmen of the receivers, $100 ; to the counsel for the Lincoln Park and Steamboat Consolidated Company for defending it in certain suits, $251, and sundry other items, amounting altogether to $10,584.96, leaving a balance for distribution of $4,015.04, out of which he awarded to the seamen $2,100.82, leaving a balance of $1,914.22, which he awarded to the Pains Pyro-Spectacle Company, the plaintiff in the attachment suit before referred to.

The claims, although many in number, may be grouped into classes, and treated as such. The first and principal exception is to the allowances to the receivers, it being alleged that they are mere intruders, who took the boats out of the hands of the sheriff for the purpose of carrying on the business of the park during the summer season, without any authority of law whatever. We are of the opinion that the exceptions to the allowance of any sum to the receivers, or to their counsel, or bondsmen, should be sustained, under the principle laid down in the late case of Lane v. The Washington Hotel Company, 190 Pa. 230, in which it was decided that even when receivers are authorized to carry on a business and sell the property of the company of which they are receivers, they cannot diminish the fund due to the creditors who are secured by liens by retaining an allowance for receivers' commissions and counsel fees.

At the time the present case was before the auditor the case of Lane v. The Washington Hotel Company had not been decided, and therefore the auditor had not the advantage which the opinion in that case would have given him in passing upon the propriety of allowing the claims of the receivers in this case. However, with that authority before us, which we welcome not only as a guide, but as the application of a wise, just and sensible principle of law, we sustain the exceptions and disallow all claims of the receivers and counsel, referring them for their compensation to the fund which they received in New Jersey from the sale of the property there, and the use of the boats.

The next and important question is upon the claim of the Equitable Trust Company. The steamboats Chauncey Vibbard and Georgeanna belonged to the Lincoln Park and Steamboat Consolidated Company, a corporation whose residence was in the state of New Jersey, and Bridgeton, the port of entry in the collection district in which the residence of the Lincoln Park and Steamboat Consolidated Company was located, is the place where those steamboats should have been enrolled: The Thomas Fletcher, 24 Fed. Repr. 375. Instead of that they were enrolled in the custom house at Philadelphia, and the mortgage of said boats was also recorded there. It is a well settled principle of United States maritime law that a vessel must be enrolled or registered in the home port of its owner. Where there are several owners the vessel may be enrolled in the home port of the ship's husband or managing owner. It is contended that inasmuch as George McGowan, the president of the Lincoln Park and Steamboat Consolidated Company, resided in Philadelphia, his residence justified the company in enrolling and registering the boats in the custom house at Philadelphia, where they were previously enrolled. But the fallacy of that argument consists in this, that Mr. McGowan is not a part owner of the boats, he was merely a shareholder in the company which owns the boats. Mr. McGowan had no individual interest whatever in the boats as boats. He had shares of stock in a company, which company was the sole owner of the boats, and as that company resided in the collection district of Bridgeton, New Jersey, the steamboats should have been enrolled there in order to give a lien for any mortgages thereon. Without elaborating upon the law on this subject it is sufficient for us to refer to the case of Johnson v. Merrill, 122 Mass. 153, where the law has been fully considered and decided by Chief Justice GRAY. See also on this point the cases of White's Bank v. Smith, 7 Wallace, 646, The Augustine Kobbe, 37 Fed. Repr. 696, and The John T. Moore, 3 Woods, 61. The claim of the Equitable Trust Company is like that on a mortgage of real estate recorded in the wrong county. It acquires no lien, having been recorded in the wrong county.

Nor can the claim be sustained as a merely temporary enrollment of the vessels. They were enrolled February 27, 1893, on the oath of George McGowan, president of the Lincoln

Park and Steamboat Consolidated Company. The company became insolvent in July, 1896, and the steamboats were levied upon in July, 1896. This enrollment of more than two years cannot be considered a temporary enrollment. Besides this, a temporary enrollment will not support a mortgage. We sustain the auditor in rejecting the claim of the Equitable Trust Company as trustee and mortgagee and relegate it to the list of general creditors.

The next question involves the claims upon certain alleged maritime liens. An interlocutory order was made with the consent of all the parties on May 29, 1899, for the payment of the auditor, the stenographer, the prothonotary, the printing of the auditor's reports, and some minor expenses, amounting altogether to $2,174.15. By the same order certain claims of seamen's wages and towing prior to the attachment were allowed, amounting to $1,590.08. The total of these payments, $3,764.23, will be first deducted out of the fund for distribution.

The largest claim upon the balance appears to be that of Morris & Mathis of Camden, New Jersey, for supplies and repairs to the steamboats Chauncey Vibbard and Georgeanna, amounting to $9,242.88. Objection is made to this claim on legal grounds. Messrs. Morris & Mathis, it is alleged, were shareholders and directors or managers of the Lincoln Park and Steamboat Consolidated Company, and it is argued that because they are such, they are not entitled to a preference over the lien creditors of the company, for this the cases of the Murphy Tugs, 28 Fed. Repr. 429, and the Queen of the St. Johns, 31 Fed. Repr. 24, are cited. Without deciding the case as a question of law, we prefer to pass upon it as the auditor has. He finds that the work was done upon contracts made with and upon the credit of the company, and not under a contract express or implied, for a lien upon the boats. These claimants had a running account with the Lincoln Park Company, with whom the dealings were had, as owners on their personal credit. The boats were not in distress nor was the owner known to be insolvent. On the contrary the owner made payments on account of this claim. Following the auditor we relegate this claim to the list of general creditors.

We sustain the auditor in rejecting the claim of Charles D. Norton & Company for coal, as that coal was sold to the com-

pany and the receivers upon their credit. It was delivered to barges from which it was distributed amongst several boats, including some leased boats, in addition to the Chauncey Vibbard and the Georgeanna, the exact amount furnished to each boat nowhere appearing, and it being a mere matter of conjecture.

The claim of Daniel McCarthy, a steward, for $90.00 seems to have been overlooked by the auditor. We allow it as a maritime lien for wages. Likewise the claims of Daniel O'Keefe, deckhand, for $21.60 and William Curry as engineer, for $48.00 are allowed.

McCarthy's claim for victualing the crews of the Vibbard and the Georgeanna, between June 16, and June 30, 1896, also appears to be a good maritime lien, and is allowed, as to the Vibbard, in the amount of $175.50, and as to the Georgeanna, in the amount of $128.25. As to any claims after the atttachment they will not be allowed as a lien, and will have to go to the list of general creditors.

The claim of Frank T. Cable for $96.00 is for services rendered to the receivers in the operation of the boats, and was properly disallowed as a lien. His claim for $269.50 for wages prior to the attachment will be allowed as a wage claim to the extent of $200, and the balance he may claim as a general creditor.

We may say here that the fund was produced by the execution under the Pennsylvania law, and is subject to claims allowed by the law of this state; wages of laborers to the amount of $200 are preferred by our law, and should be allowed in distributing the fund before us. The allowance to William T. Dahl of $35.00 and $68.33 by the auditor is approved.

The auditor properly rejected the claim of the Pinkerton National Detective Agency for the reason that the claim was not made by the men who actually did the work, but by the company which employs them under a contract with the steamboat company. This claim is not entitled to a maritime lien for services nor to a preference as wages. It will be relegated to the list of general creditors.

The auditor disallowed the claims of George Morton, Clarence A. Young, William J. Bowen, Joseph Bergantz and Joseph F. Ames, linemen, who rendered services in receiving passengers and assisting them in alighting from boats, on the ground

that they were not maritime liens. This disallowance by the auditor is approved. They are however entitled to a preference under the law relating to wages claimed.

The auditor rejected the claims of the Cape May & Delaware Navigation Company for wharfage, C. Halyburton for ship chandlery, Benjamin Brammall for lighting coal, and John Baizley for repairs because they arose on contracts with the owners on their personal responsibility. We agree with him in these cases. These claims will be relegated to the list of general creditors.

The receivers paid the sum of $100 in settlement of an action against them for injuries to a passenger on one of the boats. This sum was paid by order of this court, and the receivers will be allowed credit therefor.

The receivers also claimed credit for money borrowed from the People's Bank to pay for insurance on the boats, $1,715.14, less a rebate of $360, making a difference of $1,355.14, for which they will be allowed credit.

The sums claimed for electric lighting, advertising in newspapers, counsel fee of Mr. Leaming, disinfecting boats, and sundry expenses, will be relegated to the list of general creditors, and receive a dividend, if any remains after payment of the preferred claims.

A feeble objection was made to the amount claimed for the auctioneer's expenses of selling the boats, the sheriff's costs, auditor's fee and the stenographer's bill, but by agreement of all the parties they were ordered to be paid and have been paid.

On April 5, 1899, an order was made on motion of all the parties that the auditor's report be printed, the costs to be paid out of the fund. This item of expense will also be deducted.

The report will be referred back to the auditor for the purpose of restating the account and allowances. Any interest accrued upon the fund in the hands of receivers must be accounted for by them. The amount already paid by the orders of court made April 5, and May 29, 1899, shall be first deducted, together with the costs of suit, then the maritime liens and wages claims allowed by this opinion.

Next the claim of the plaintiff in the attachment suit, the Pains Pyro-Spectacle Company. The residue, if any, shall be

accounted for by the receivers on the settlement of their account which includes the amount received by them from the property in New Jersey and operating the boats if any. The fee heretofore paid to the auditor will include the expense of this reference.

On reargument ARNOLD, P. J., filed the following opinion:

We have heard a reargument in this case and given it a careful consideration. Although appeals have been taken by some of the claimants, yet they were taken prematurely, as no final decree of distribution has been made in the case. Our order made July 5, 1899, was " exceptions in part sustained and matter referred back to the auditor." This was interlocutory and not final.

The first claim to be considered is that of the receivers and their attorneys for commissions. While we have decided that they are not entitled to commissions, counsel fees and the amount paid for entering their bond of suretyship, still we have allowed, and intend to allow them for all moneys they have actually expended in litigation concerning the boats. Therefore, all expenses incurred and paid by them in suits in this and other courts will be allowed. We have gone to the utmost length of indulgence in this matter. The order of court made on the petition of the sheriff directing the receivers to sell the boats does not entitle the receivers to commissions or counsel fees in preference to fixed liens. The misunderstanding as to the receivers' compensation has been caused by treating the account before us as a general account, whereas it is merely an account of the moneys received from the sale of two steamboats which were incumbered by maritime liens in excess of the amount they sold for. The auctioneer's charges for selling the boats, $1,270.23, appear to us to be extravagant, but having been paid, we have approved the payment. The act of the receivers taking possession of the boats and keeping them for a long time increased the sheriff's costs and wharfage, making the costs $506, and altogether there does not appear to have been that watchful regard for the rights of the creditors and others interested in the sale of the boats which should have been given.

We adhere to our ruling in relation to the claim of Morris

& Mathis that their claim is based upon contracts made with and upon the credit of the company and not upon the credit of boats in distress.

The claim of Daniel McCarthy for victualing the crews of the Vibbard and Georgeanna, as heretofore allowed, did not include all that he was entitled to. His claim is for victualing between June 1, and July 25, 1896, and charges the Vibbard to the amount of $632.25 and the Georgeanna $470.25. As we have allowed the seaman's claim for wages we also allow the claim for feeding the seamen, under the Act of June 24, 1895, P. L. 251.

We see no reason to change our opinion as to the claim of C. Halyburton for ship chandlery, which arose on a contract made with the owners on their personal responsibility, and not on the credit of the boats.

The claim of the Equitable Trust Company, which held two mortgages on the steamboats, presents a question which has received careful consideration. Following the decision in Johnson v. Merrill, 122 Mass. 153, we have heretofore decided that the mortgages held by the trust company were improperly enrolled in the custom house in Philadelphia instead of Bridgeton, New Jersey, and therefore, we decided that they were not a lien on the vessels. Reflection leads us to a different conclusion. Section 4141 of the Revised Statutes of the United States (act of December 31, 1792) provides that " every vessel shall be registered by the collector of that collection district which includes the port to which such vessel shall belong at the time of her registry: which port shall be deemed to be that at or nearest to which the owner, if there be but one, or if more than one, the husband or acting or managing owner of such vessel, usually resides." Previous to registry an oath is required showing the place where the vessel was built, her owner or owners' names and place of abode, with some other details, and the penalty for false swearing is the forfeiture of the vessel: Sections 4142, 4143.

Enrollment is the term used in describing the registry of a vessel engaged in domestic commerce, as distinguished from a vessel engaged in foreign commerce and navigation, and to entitle a vessel to enrollment " the same requirements in all re-

spects shall be complied with as are required before registering a vessel: " Act of February 18, 1793, section 4312.

As a vessel is movable and not fixed, it was necessary to resort to some other method than the locality in which the vessel might be, to determine where she should be registered or enrolled. Therefore, the residence of the owner, if only one, or the ship's husband, if there are more owners than one, was designated as the place at which registry or enrollment should be made. Registers for vessels owned by an incorporated company may be issued in the name of the president or secretary of the company, but a new registry or enrollment must be taken out on the death, removal or resignation of such president or secretary: Act of March 3, 1825, secs. 4137, 4138, 4313, 4315. These sections are permissive and have no application to the present case, as the vessels of the Lincoln Park Company were enrolled in the name of the company and not in the name of its president or secretary.

Mortgaging a vessel is regulated by Act of July 29, 1850, sec. 4192, which provides that "no bill of sale, mortgage, hypothecation or conveyance of any vessel or part of any vessel of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation or conveyance is recorded in the office of the collector of the customs where such vessel is registered or enrolled." When the acts of congress on this subject were passed there were perhaps very few vessels owned by corporations. Ownership was generally vested in individuals who resided at or near the port from which their vessels sailed, and their residence was a fact generally known or easily ascertained upon inquiry; but now, in view of the great increase in the business of transportation by vessels and the change in the present modes of living, by which business men have more than one residence, it is casting a heavy burden on the mortgagee of a vessel to require him to inquire where the owner of an enrolled vessel lives, and if he has two residences, which is his legal residence, as for voting or taxing purposes. If the owner has a residence in two states, between which he divides his time equally, or even unequally, is a mortgagee bound to take the risk of deciding which is the legal residence of the owner and the

home port of the vessels owned by him. Or, if the owner resides in an inland state, as Montana, for instance, and buys a vessel in Boston and enrolls her there, is a mortgagee to decide whether the owner should have enrolled the vessel at some other port, as New York, New Orleans, or Portland, Oregon, which is nearer the place at which he usually resides? Judge WARE in the case of The St. Lawrence, 3 Ware, 211, had this question before him, and he decided that where the legal domicile of a ship's husband was in Northport Maine, but he passed two thirds of his time in New York and carried on business there, he might enroll the vessel in New York. This ruling would apply to a corporation, which, while it may be said to reside, so far as a corporation can be said to have a residence, in the state in which it was created, nevertheless does business in other states. Thus a corporation chartered in West Virginia and transacting its business in another state or other states, of which it is common knowledge that there are many, might be at a loss to know where to enroll its vessels. We may very readily conclude that if such a corporation enrolls its vessels in the port in which it transacts its business, it complies with the law so far as it can; and we may also conclude that any corporation licensed to do business in a state other than that which created it, may enroll its vessels there without fear of their being forfeited, and that a mortgagee may safely enroll its mortgage in the port where the vessel is enrolled in order to obtain a lien thereon. We must give the statutes an interpretation which will facilitate the transaction of business according to the changes in the customs and conditions of the people engaged in business, otherwise the laws made for the lawful transaction of buiness would be the means of causing insecurity instead of the safety they meant to insure.

We will, therefore, award the residue of the proceeds of the vessels to the Equitable Trust Company on account of its mortgage, to the exclusion of the attaching creditor, the Pains Pyro-Spectacle Company. The court costs of the suit by the Pains Pyro-Spectacle Company against the Lincoln Park Company, which resulted in the sale of the boats and created the fund in court, will be paid out of the fund.

The auditor will prepare a table of distribution in accordance with the opinion heretofore filed as now modified.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Richard C. Dale*, for George McGowan and Bernard Gilpin, receivers and appellants, in No. 395.—The receivers were entitled to compensation out of the fund : Booth v. Clark, 17 Howard, 331 ; Beach on Receivers, sec. 773 ; Hopfensack v. Hopfensack, 61 How. Pr. (N. Y.) 508.

*Horace L. Cheyney*, with him *John Frederick Lewis*, for Equitable Trust Company, appellee, in No. 395.—A court of equity will not permit fixed liens to be impaired by the allowance of large amounts for receivers' compensation : Schwartz v. Keystone Oil Co., 153 Pa. 283 ; Lane v. Washington Hotel Co., 190 Pa. 230 ; Hinckley v. Gilman, etc., R. R. Co., 100 U. S. 153 ; Lichtenstein v. Dial, 68 Miss. 54 ; Morgan v. Hardee, 71 Ga. 736 ; High on Receivers, sec. 781.

*John G. Johnson*, with him *Joseph Hill Brinton*, for Morris & Mathis, appellants, in No. 400.—Appellants had either a maritime lien or one under the New Jersey laws : Henry on Admiralty, p. 137 ; The Lulu, 10 Wallace, 192 ; The Patapsco, 13 Wall. 329 ; The Madrid, 40 Fed. Repr. 677 ; Benedict's Admiralty, secs. 267, 268 ; The J. E. Rumbell, 148 U. S. 1 ; The Mary Bell, 1 Sawyer, 135 ; The Kalorama, 10 Wall. 204 ; The St. Lawrence, 1 Black, 522 ; The Grapeshot, 9 Wall. 141 ; The Sea Lark, 1 Sprague, 571 ; The Marion S. Harris, 29 U. S. C. C. A. Rep. 428.

*Horace L. Cheyney*, with him *John Frederick Lewis*, for Equitable Trust Company, appellee, in No. 400, cited on the question of lien : The Kate, 56 Fed. Repr. 614 ; The Gen. Smith, 4 Wheaton, 438 ; The Patapsco, 13 Wall. 329 ; Stephenson v. The Francis, 21 Fed. Repr. 715 ; The Now Then, 50 Fed. Repr. 944 ; The Planter, 7 Peters, 324 ; The Lottawanna, 21 Wall. 558 ; The J. E. Rumbell, 148 U. S. 1 ; The Electron, 74 Fed. Repr. 689 ; Lighters Nos. 27, 28, 57 Fed. Repr. 664 ; The Katie, 56 Fed. Repr. 614 ; The Advance, 60 Fed. Repr. 766.

*Horace L. Cheyney*, with him *John Frederick Lewis*, for ap-

pellant, in No. 415.—The court erred in allowing the claim of
the master, the watchman, the policeman and McCarthy : Fisher
v. Willing, 8 S. & R. 118; The M. Vandercook, 24 Fed.
Repr. 472; The Havana, 1 Sprague (U. S.), 402; Trainer v.
The Superior, 1 Gilpin, 514; The Gen. Smith, 4 Wheaton, 438;
Stephenson v. The Francis, 21 Fed. Repr. 715; The Now
Then, 50 Fed. Repr. 944.

*William F. Meyers,* for various parties, appellees, in No. 415,
cited Wilkinson v. Patton, 162 Pa. 12, Brown v. German-
American Title & Trust Co., 174 Pa. 443, Loughin v. Mc-
Caulley, 186 Pa. 517, Johnson v. Chicago, etc., Elevator Co.,
119 U. S. 388, Winsor v. Maddock, 64 Pa. 231, The Plymouth
Rock, 13 Blatchf. (U. S.) 505, Hook v. The Venture, 16
Pitts. Leg. Jour. (N. S.) 187, McRae v. Bowers Dredging Co.,
86 Fed. Repr. 344, Lidgerwood Mfg. Co. v. Steam Dredge Boat
Eastern No. 2, 28 Pitts. Leg. Jour. (N. S.) 387, Srodes v. The
Collier 9 Pitts. Leg. (O. S.) 73, Hommel v Lewis, 104 Pa.
465, and Green & Co. v. Thompson, 172 Pa. 609.

*Paul S. Richards,* with him *James F. Campbell,* for Pains
Pyro-Spectacle Company, appellants, in No. 416. — If sec-
tion 4912, Revised Statutes of the United States does create a
lien, it applies only to vessels of the United States : Webb on
Record of Title, sec. 188; Porter v. Dement, 35 Ill. 480;
White's Bank v. Smith, 7 Wall. 646; Thurber v. The Sloop
Fannie, 8 Ben. (Dist. Ct. Rep.) 429; Johnson v. Merrill, 122
Mass. 153.

The vessels Georgeanna and Chauncey Vibbard were not
vessels of the United States because they were not enrolled
and licensed in pursuance of the requirements of sections 4311,
4312, 4141: 1 Wade on Attachment, par. 51; Day v. New-
ark India Rubber Mfg. Co., 1 Blatchf. 628; St. Louis v. Wig-
gins Ferry Co., 40 Mo. 580; Bank of Augusta v. Earle, 13
Peters, 588; Watson v. Thompson Lumber Co., 49 Ark. 83;
Cook v. Hager, 3 Colo. 386; Briggs v. Leitelt, 41 Mich. 80;
The Havana, 64 Fed. Repr. 496.

The residence of the park company is located at the port of
Billingsport, which is comprised within the collection district
of Bridgeton : The Lotus No. 2, 26 Fed. Repr. 637; Gar-

ston Sailing Ship Co. v. Hickie, L. R. 18 Q. B. D. 17; Price
v. Livingston, L. R. 9 Q. B. D. 679; De Longuemere v. Fire-
man Ins. Co., 10 Johns. (N. Y.) 125; Patrick v. Commercial
Ins. Co., 11 Johns. (N. Y.) 14.

The mortgage must be recorded in the collection district of
the home port: The Augustine Kobbe, 37 Fed. Repr. 696;
The John T. Moore, 3 Woods, 61; Webb on Record of Title,
sec. 188; McKeen v. Delancy, 5 Cranch, 22; Anthony v. But-
ler, 13 Peters, 423; Mumford v. Wardwell, 6 Wall. 423.

*John Frederick Lewis*, with him *Horace L. Cheyney*, for
Equitable Trust Company, appellee, in No. 416.—The recording
of mortgages is governed entirely by the laws of the United
States: Loughin v. McCaulley, 186 Pa. 517; White's Bank v.
Smith, 7 Wall. 646; Aldrich v. Ætna Co., 8 Wall. 491.

The mortgages were properly recorded in the custom house
at Philadelphia.

The Georgeanna and Vibbard were vessels of the United
States: Spratt v. Spratt, 4 Peters, 393; Stark v. Chesa-
peake Ins. Co., 7 Cranch, 420; McCarthy v. Marsh, 5 N. Y.
263; Ross v. Reed, 1 Wheaton, 482; United States v. Arre-
dondo, 6 Peters, 691; Strother v. Lucas, 12 Peters, 410;
Phila. & Trenton R. R. Co. v. Stimpson, 14 Pet. 448; Wilkes
v. Dinsman, 7 Howard, 89; The Kate Heron, 6 Sawyer, 106;
White's Bank v. Smith, 7 Wall. 646.

The boats were properly enrolled at Philadelphia.

The mortgages are valid against the attaching creditors, even
if improperly recorded: Moore v. Simonds, 100 U. S. 145; In
re Baldwin's Est., 4 Pa. 248; Reed v. Penrose, 36 Pa. 214;
Strong v. Bass, 35 Pa. 333.

PER CURIAM, July 11, 1900:

We are satisfied from a careful examination of the claims
made by the appellants upon the fund for distribution that the
conclusions arrived at by the learned court below were substan-
tially correct. As the learned judge of the court below in
his opinion of July 5, 1899, sustained some of the exceptions to
the report of the auditor, and referred it back to him for the
purpose of restating the account and allowances, it could not be
considered as a final decree of distribution. Besides the opin-

ion of July 5, 1899 was modified by the opinion of November 2, 1899. The final distribution of the fund made by the auditor was subsequent to and in conformity with the opinion of July 5, 1899, as modified by the opinion of November 2, 1899. We therefore affirm the final distribution as made, upon the opinion of Judge ARNOLD modified as above stated.