## In re EMPIRE SHIPBUILDING CO.

(Circuit Court of Appeals, Second Circuit. February 9, 1915.)

### No. 136.

1. SHIPPING ⊂══33—MORTGAGE—RECORDING—VESSEL UNDER CONSTRUCTION.

Rev. St. § 4192 (Comp. St. 1913, § 7778), providing for the recording of mortgages of vessels of the United States in the office of the collector of customs, does not authorize the recording, immediately after the enrollment of a vessel, of a mortgage, which was executed some time before, while the vessel was still in the course of construction, since the mortgage, when executed, was not a mortgage of a vessel of the United States.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 109–119; Dec. Dig. ⊂══33.]

2. SHIPPING ⊚⇒33—MORTGAGE—UNAUTHORIZED RECORDING—EFFECT.
 The recording in the office of the Collector of Customs of a mortgage on a vessel which there was no authority to record did not give constructive notice of the mortgage.
 [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 109–119; Dec. Dig. ⊚⇒33.]

Appeal from the District Court of the United States for the Western District of New York.

This cause comes here upon appeal from a decree of the District Court for the Western District of New York, directing the payment by the trustee in bankruptcy of the bankrupt of the proceeds of the sale of the vessel United Shores to certain claimants of said proceeds to the extent necessary to satisfy their claims, and of the remainder of said proceeds to the trustee in bankruptcy to apply upon the claims of general creditors. This appellant is mortgagee of the said vessel under a trust mortgage given to secure bonds to the amount of $30,000. The questions involved are briefly as follows:

First. Whether the mortgage in question is valid as respects general creditors and lienors under the New York state Lien Law (Consol. Laws, c. 33).

Second. Whether, if valid, the mortgage has priority over construction liens filed under said state Lien Law.

The District Court held in effect that the mortgage was invalid for failure to properly register the same under the Revised Statutes and it is from this decision that this appeal is taken.

Moot, Sprague, Brownell & Marcy, of Buffalo, N. Y. (George Clinton, Jr., of Buffalo, N. Y., of counsel), for appellant Commonwealth Trust Co.

Clinton, Clinton & Striker, of Buffalo, N. Y. (George Clinton, Jr., of Buffalo, N. Y., of counsel), for Buffalo & Ft. Erie Ferry & Railway Co.

Brown, Ely & Richards, of Buffalo, N. Y. (Fred W. Ely, of Buffalo, N. Y., of counsel), for appellees Rogers and others.

Harvey D. Blakeslee, Jr., of Buffalo, N. Y. (Thomas C. Burke, of Buffalo, N. Y., of counsel), for appellee Burke.

August Becker and J. Ralph Ulsh, both of Buffalo, N. Y., for Beals & Co.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The vessel United Shores was constructed by the bankrupt pursuant to a contract with the Buffalo & Ft. Erie Ferry & Railway Company, hereinafter called the Buffalo Ferry Company. The contract provided that the title to the vessel should remain in the Shipbuilding Company until payment of the purchase price had been made, but, for the purpose of enabling a mortgage to be placed on her to provide funds with which to pay the purchase price, it was stipulated that the Shipbuilding Company should transfer the vessel to some person or corporation designated by the purchaser which person or corporation should execute a mortgage to secure bonds to be issued and there retransfer the vessel to the Shipbuilding Company. The vessel was launched in May, 1911, but was not then completed,

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

work being done on her for two months more. On May 31, 1911, the Shipbuilding Company executed to the International Ferry Company (designated by the Buffalo Ferry Company) a bill of sale of the vessel, which was described as being "now in the process of construction at the shipyard of the vendor." On June 1, 1911, the International Ferry Company executed the mortgage in question to the Commonwealth Trust Company. The mortgage stated that the vessel "has not been registered or enrolled, it still being in course of construction, but is to be hereafter registered or enrolled." On June 2, 1911, the International Ferry Company executed to the Shipbuilding Company a bill of sale of the vessel "now in process of construction at the shipyard of the vendee," subject to the mortgage.

On August 9, 1911, the vessel was so far completed that upon certificate of the master carpenter (Rev. Stat. U. S. § 4147 [Comp. St. 1913, § 7724]) and the surveyor, and the oath of the president of the Shipbuilding Company, her owner, certificate of enrollment as a vessel of the United States (Id. § 4319 [section 8065]) was issued by the deputy collector of customs at Buffalo. At what hour on August 9th this transaction took place does not appear. On the same day there were recorded in the office of the collector at 11:45 a. m. the bill of sale to the International Ferry Company, at 11:50 a. m. the mortgage to the Trust Company, at 11:52 a. m. the bill of sale to the Shipbuilding Company.

[1, 2] The fundamental question in the case is whether the mortgage was properly recorded, for unless it was the record is not legally notice to any one. Unless it was a mortgage properly recordable in the customhouse, the mere fact that it was recorded there would not operate as constructive notice of its existence. Section 4192, Revised Statutes U. S. (Comp. St. 1913, § 7778), reads:

"No bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel, of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance is recorded in the office of the collector of the customs where such vessel is registered or enrolled."

This section is confined to bills of sale, conveyances, or mortgages of vessels of the United States. Mortgages of personal property generally, or of items of personal property which it is intended shall be put together to make a vessel, which it is intended shall thereafter be enrolled as a vessel of the United States, are not within its enumeration. The status of the thing mortgaged is to be determined by its condition when the mortgage is made. If it be then a vessel of the United States, the section applies; if it be not then such a vessel, the section does not apply. Of course, between the parties the mortgage is good; for mortgages of personal property, not United States vessels, there are provisions whereby constructive notice of the making of such mortgages can be given; a United States customhouse is not the place to record them. That this mortgage, when it was made June 1, 1911, was not a mortgage of a vessel of the United States, is indisputable. Not only does the testimony show that two months' work remained to be done in order to complete her sufficiently to obtain

certificate of enrollment, but on the face of the mortgage itself it is stated that the vessel is "still being in course of construction," and that she is "to be hereafter registered or enrolled with the collector of customs." The subsequent completion and enrollment of the vessel on August 9, 1911, no doubt changes the status of the vessel itself; but we cannot see how it changes the status of the mortgage, which was made two months before when the vessel was yet incomplete. In our opinion the mortgage was not one recordable in the customhouse, and the collector should have refused the request to record it. Since it is not recordable, its improper recording does not operate as constructive notice under section 4192.

The proper course would have been, first, to enroll the vessel in the name of its owner as a vessel of the United States. This was done. Then the owner could execute a mortgage of it, which, being a mortgage of a United States vessel, could have been recorded. Then any bill of sale which the owner might choose to execute could be executed and recorded. Such documents, being thus properly recorded, would be notice from the date of their recording. Neither the two bills of sale, nor the mortgage, all made before enrollment, were recordable under section 4192, and therefore their improper recording was constructive notice to no one, although the instruments were operative between the parties.

As to the claims of the Buffalo Ferry Company and of Beals & Co., we concur with the District Judge.

Decree affirmed, with costs.