## THE UNDERWRITER.

(District Court, E. D. New York. January 17, 1925.)

**1. Shipping ⬉5, 33—Mortgage on vessel invalid if vessel has not been duly registered and mortgage has not been duly recorded.**

Under Rev. St. § 4192 (Comp. St. § 7778), a mortgage on a vessel is invalid except as to mortgagor or persons having actual notice unless vessel was registered at time mortgage was made in office of collector of collection district including the port nearest the place where owner resides, and mortgage is duly recorded in such office, under Rev. St. §§ 4131, 4141 (sections 7707, 7719).

**2. Shipping ⬉4, 33—Statutes as to registration of vessel and recordation of mortgage held not repealed or modified by Ship Mortgage Act 1920.**

Rev. St. §§ 4131, 4141, 4192 (Comp. St. §§ 7707, 7719, 7778), providing for registration of vessels in office of collector of collection district including port nearest place where owner resides, and for recordation of mortgage on vessel in such office, *held* not repealed or modified by Ship Mortgage Act of 1920, § 30, subsecs. B, C (Comp. St. Ann. Supp. 1923, §§ 8146¼k, 8146¼kk).

**3. Shipping ⬉33 — Corporation "resides," within statutes as to registration of ships and recordation of mortgages, where principal office fixed by charter is located.**

Under Rev. St. §§ 4131, 4141, 4192 (Comp. St. §§ 7707, 7719, 7778), providing for registration of vessels in office of collector of collection district including port nearest place where owner resides, and for recordation of mortgage in such office, owner, where a corporation, resides where its principal office is located in accordance with its charter, and not at its principal place of business.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reside.]

In Admiralty. Libel by the Metropolitan Trust Company of the City of New York against the steam tug Underwriter and the Smith & Terry Towing Company, Inc., in which other creditors intervened. Libel dismissed.

Carter, Ledyard & Milburn, of New York City (Rush Taggart, of New York City, of counsel), for libelant.

Crowell & Rouse, of New York City (J. D. Crowell, of New York City, of counsel), for F. K. Carlon & Co., Inc.

William F. Purdy, of New York City, for N. S. Horton Co. and another.

Macklin, Brown & Van Wyck, of New York City (Richard F. Lenahan, of New York City, of counsel), for S. S. Fuel Corp.

Alfred H. Strickland, of New York City, for claimant.

INCH, District Judge. This is a hearing on exceptions and exceptive allegations filed by certain interveners to the libel of the Metropolitan Trust Company of the City of New York. This libel was filed against the steam tug Underwriter and the Smith & Terry Towing Company, Inc., its owner. The latter filed an answer admitting liability. All the facts are deemed, for the purpose of this hearing, as set forth in said libel, as true, and the only question presented is one of law. This question of law is whether the mortgage of the libelant is valid and entitled to be preferred to the claims, if any, of the said interveners. The solution of this question depends on whether or not this mortgage was duly recorded in accordance with the statutes of the United States.

It is thus assumed that said Smith & Terry Towing Company, Inc., is a corporation organized under the laws of the state of Delaware; that its principal office, fixed by its charter, is in the town of Bethel, Sussex county, state of Delaware; that it was at the time of making the mortgage and still is the sole owner of the steam tug Underwriter; that its principal place of business is at 11 Moore street, city, county, and state of New York; that on November 9, 1923, this corporation executed, in the city of New York, a mortgage on said steam tug, to the said Metropolitan Trust Company, in the sum of $15,000; that said tug was documented solely in the office of the collector of customs at the port of New York; that said mortgage was recorded only in said office and port at New York City; that subsequently this tug was arrested in several suits, brought by supply men and others in this Eastern district, and the said corporation owner having failed to comply with the express conditions of said mortgage, the said Trust Company, as mortgagee, declared the mortgage to be due, and filed this libel against said tug to foreclose its mortgage as a preferred mortgage.

Then came the intervening petitions by these alleged creditors, who have likewise started suit in rem against the tug, and it is their exceptions to the said libel of the trust company that make necessary this hearing.

Libelant claims that said mortgage was duly recorded in accordance with the law, and that therefore it is valid and preferred.

The interveners contend that the said mortgage was not duly recorded, and that the said tug was not duly documented; hence said mortgage is not valid and should not be preferred to their claims. There is no allegation or proof that any intervener actually knew of the prior execution of this mortgage.

Section 4131, R. S. (Compiled Statutes, § 7707), provides, among other things, "Vessels registered pursuant to law and no others * * * shall be deemed vessels of the United States."

Section 4141, R. S. (Compiled Statutes, § 7719), provides: "Every vessel, except as is hereinafter provided, shall be registered by the collector of that collection district which includes the port to which such vessel shall belong at the time of her registry; which port shall be deemed to be that at or nearest to which the owner, if there be but one, or, if more than one, the husband or acting and managing owner of such vessel, usually resides."

Section 4192, R. S. (Compiled Statutes, § 7778), provides: "No * * * mortgage * * * of any vessel * * * of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such * * * mortgage * * * is recorded in the office of the collector of the customs where such vessel is registered or enrolled."

The above statutes indicate sufficiently the time-honored method of registering a vessel and the requirements for recording a mortgage upon it.

[1] If a mortgage is not duly recorded or if the vessel is not duly registered or documented at the time of the making of the mortgage, the mortgage is invalid except as to those expressly stated as exceptions. In re Empire Shipbuilding Co., 221 F. 223, 136 C. C. A. 633.

Here the owner of the vessel was a Delaware corporation, and there is no claim that the vessel was ever registered or documented at any port in the state of Delaware or that the mortgage was recorded at any place in the state of Delaware. Therefore the exceptions of the interveners contesting the validity of this mortgage can be stated practically in the words now quoted from the case of Robins Dry Dock & Repair Co. v. Steamship Susana (C. C. A.) 2 F.(2d) 410, infra: "First, because the ship, at the time the mortgage was executed and thereafter continuously until the levying of the attachment, was not a vessel of the United States, in that it was not documented as the law requires; and, second, because the mortgage was not recorded at the place the statute required to give it validity against persons having no actual knowledge of its existence."

Accordingly, if the vessel was not in the first place duly documented pursuant to section 4131, R. S., and section 4141, R. S., the mortgage would be invalid.

Section 4131, R. S., has been held not to be repealed or modified by the Ship Mortgage Act 1920 (Comp. St. Ann. Supp. 1923, §§ 8146¼jjj–8146¼rr). The Lincoln Land (D. C.) 295 F. 358 (rehearing) at page 363. Also on the original hearing in the above case that court stated (page 362), which is significant: "It seems settled on the authorities that, upon the sale of the Lincoln Land to a Delaware corporation, the port of New York ceased to be the home port of the vessel."

While both these cases of Lincoln Land and Robins Dry Dock v. Steamship Susana relate to cases where ownership of a vessel had changed and the question there was presented of the necessity of the new owner to conform with section 4170, R. S. (Compiled Statutes, § 7751), which situation is not here before me, yet, particularly the latter case (although there, there had been no documentation of the vessel at all by the new owner), seems to me to have decided, within the scope of the issues there presented, the single contention now before me.

Section 30, subsec. B, of the Ship Mortgage Act of 1920 contains the following definitions:

"(1) The term 'document' includes registry and enrollment and license; (2) the term 'documented' means registered or enrolled or licensed under the laws of the United States, whether permanently or temporarily; (3) the term 'port of documentation' means the port at which the vessel is documented, in accordance with law; (4) the term 'vessel of the United States' means any vessel documented under the laws of

the United States and such vessel shall be held to continue to be so documented until its documents are surrendered with the approval of the board."

Section 30, subsec. C, provides that—

"No sale, conveyance, or mortgage which * * * includes a vessel of the United States * * * shall be valid, in respect to such vessel, against any person other than the grantor or mortgagor, * * * and a person having actual notice thereof, until such bill of sale, conveyance, or mortgage is recorded in the office of the collector of customs of the port of documentation of such vessel, as provided in subdivision (b) of this subsection."

[2] Following the decisions above mentioned, it seems to me that the provisions above quoted from the Ship Mortgage Act 1920 do not repeal or modify the previous statutes above referred to, and that the discussion really comes down to the question: Where is the "home port," as set forth in section 4141, on the facts here presented?

Section 4159, R. S. (Compiled Statutes, § 7740), and section 4160, R. S. (Compiled Statutes, § 7741), and similar sections are not applicable to the facts before me. Also, section B (4) would seem to apply only to vessels duly documented in the first instance. There is no claim that the vessel here had ever been documented in any other port than New York. Therefore if the residence designated by R. S. § 4141, of this mortgagor corporation, is at Bethel, state of Delaware, then the port nearest to such residence might be Wilmington, Del.; it certainly would not be the port of New York.

[3] Where then was the "residence" referred to by the statute? The rigidity of the statute often creates a temptation to legislate by court decision, so that the statute will not only be more elastic but will approach nearer the accomplishment of its purpose, viewed in the light of the business needs of a particular locality where that particular court is situated. One construction might do for a certain locality, and still another might be better for another portion of the country. The right and sometimes duty of a court to legislate as to "interstitial" matters is well set forth in Judge Cardozo's thoughtful book, "The Nature of the Judicial Process." There would seem, however, no necessity or opportunity for the exercise here of such "process" where the plain words of a statute are concerned and same have been repeatedly construed.

Whether or not it is correct to call the place fixed by its charter where and by which a corporation is born its "domicile," or "fixed" residence, is immaterial, for the reason that here the statutes that control are federal statutes, and the Supreme Court has, on numerous occasions, held that a corporation organized under the laws of a certain state shall have its "legal home" at the place where it is located by or under the authority of its charter; and yet it may, by its agents, transact business anywhere, unless prohibited by its charter or excluded by local laws. Ex parte Schollenberger, 96 U. S. 369, 24 L. Ed. 853.

Later this same court said: "In the case of a corporation the question of inhabitancy must be determined, not by the residence of any particular officer, but by the principal offices of the corporation, where its books are kept and its corporate business is transacted, even though it may transact its most important business in another place." Galveston Railway v. Gonzales, 151 U. S. 496, 14 S. Ct. 401, 38 L. Ed. 248.

Still later: "We are of opinion that a corporation organized under the laws of Illinois is to be deemed a resident of the state within the meaning of the Chattel Mortgage Act, and that the county of its residence must be taken to be the county in which its principal office is located. So far as the decisions of the state courts throw light upon the question they bear out this view." Fairbanks Co. v. Wills, 240 U. S. 642, 36 S. Ct. 466, 60 L. Ed. 841.

From such cases, selected at random from many, it seems to me plain that the Supreme Court has held the "residence," or "domicile," if one chooses to apply that term, of a corporation organized under the laws of one of the forty-eight states to be in that state in which it was incorporated provided a principal office therein is so fixed by its charter. Some of the decisions above quoted and elsewhere relate to questions affected by state statutes, while here, as has been said, it is purely federal statutes that are involved. It is common for a corporation incorporated in one state to do practically all of its business, in a great center, in another state.

The purpose of recording a mortgage lien is the likelihood of putting those who might be affected by it on notice of its existence. The argument is here made that

such a person, searching for such liens, would be much more likely to consult the records in New York City, in this case, where the mortgagor is here conducting most of its business, than in some obscure office in another and distant state, and in supporting this argument, sentences could be referred to from cases where the words "principal business is transacted" or where its "books are kept," etc., appear. For instance, this mortgage was made in the state of New York, and in Lockwood v. U. S. Steel Corp., 209 N. Y. 375, at page 385, 103 N. E. 697, L. R. A. 1915C, 471, in discussing the case of a New Jersey corporation maintaining an office in the county of New York, it is stated that under the facts of that case, notwithstanding that its charter fixed its principal office in the state of New Jersey, the corporation was *deemed* to be "domiciled" in the state of New York "to some extent at least, so far as the registry and transfer of shares therein are concerned." The same thing has been held in reference to life insurance companies. Morgan v. Mutual Benefit Life Ins. Co., 189 N. Y. 447, 82 N. E. 438; and see German American Coffee Co. v. Diehl, 216 N. Y. 57, 109 N. E. 875.

Domicile *for certain purposes,* has been deemed, by the Supreme Court, to exist in the foreign state, where the corporation was permitted to conduct a considerable portion of its business in such state. New England Mutual Life v. Woodworth, 111 U. S. 138, 4 S. Ct. 364, 28 L. Ed. 379.

However, these cases, when examined, seem to indicate that there are certain purposes which control the interpretation of the word "domicile," and except for these special purposes, the language of the Supreme Court is still the law on the question of domicile, where it says: "By doing business *away from their legal residence* they do not change their citizenship, but simply extend the field of their operations. They reside at *home,* but do business abroad." Railroad Co. v. Koontz, 104 U. S. 5, 11 (26 L. Ed. 643). This construction as to the place for the documentation of vessels and recording of mortgages has been the established law for years. Blanchard v. The Martha Washington, Fed. Cas. No. 1,513, and White's Bank v. Smith, 7 Wall. 646, 19 L. Ed. 211.

In the latter case, to be sure, the following reasoning occurs: "While the home port may be at the city of New York, the temporary registry or enrollment may be made at New Orleans or San Francisco, or Portland, in Oregon, where it would be as inconvenient for the vendee or mortgagee to make a record of the bill of sale or mortgage as it would be for a person dealing in this species of property to acquire any notice of such record; whereas a record at the home port is within the district where the owners reside, and where negotiations or dealings in respect to this species of property would naturally be conducted." Page 655.

It seems to me that this statement also must be taken into consideration with the circumstances as to communication, etc., then existing in this country in 1868. At the present time it is almost as easy to communicate with San Francisco or Portland, Or., as it is with nearby cities. The difficulty as to obtaining information and speedy copies of papers no longer exist. The slight additional expense yields, it seems to me, to the approximate certainty, in the case of corporations, indicated in holding the "home port" to be that nearest to the place fixed in its filed charter.

(The underlining and other marks in the above cases are mine.)

It should be borne in mind therefore that the statutes involved here relate to the proper filing of a ship's mortgage and is purely a federal question. It does not involve state statutes, or facts which have apparently sometimes compelled the courts, in order to do justice, to construe a "domicile" or "permanent residence" of the corporation, to be elsewhere than in the state of its origin.

Counsel for libelant argues that this Delaware corporation had its "commercial domicile" here. I am not aware of any case holding that a corporation can, at the same time, have two "domiciles." Cases examined seem to me to indicate simply that for certain particular purposes only, a corporation may be held to have its "domicile" in one state, while for all other purposes its "domicile" is held to be in the state of its origin.

Moreover, besides this case involving purely a federal question, it does not seem to me that holding the "residence" or "domicile" to be that fixed in the charter imposes any greater likelihood of error in a search or unnecessary burden. On the contrary, it seems to me to be a safer and less expensive method to hold that the residence referred to in the statute (section 4141, R. S.) is that fixed in the charter, for the

reason that any person intending to loan money on a ship, or otherwise extending credit to its owner can then find out by the asking or the simplest of investigation, exactly where the borrower, if a corporation, resides and such residence can be shown promptly and with exactitude, as well as the nearest or home port. To hold otherwise may in many cases bring into a matter the much litigated question of "what constitutes doing business," the amount thereof, and many similar questions of fact, which are a source of much litigation, and which seem to me to tend to make it comparatively uncertain where to look.

A charter is on file and ordinarily available at all times. Certainty is the result above all others to be sought. Certainty for the mortgagee, where to record the mortgage. Certainty for those likely to be affected by the lien, where to look for it. It seems to me that this certainty is closely approximated, in a case of a corporation, by construing the "residence" to be that designated in the filed charter.

It is not infrequent that large corporations select a city outside its charter residence for its business office and then, because of economic conditions, in housing its employees, or transporting its merchandise, move to another place in another state. Thus it may leave a trail of various such places, in the nearest port to which an attorney, searching for a lien, must in turn look. This sort of factual residence which necessarily exists in the case of an individual should be avoided if possible in the case of a corporation.

It is not inconceivable that this uncertainty in the case of an individual was in the mind of our state Legislature, when it made the law as to the place of filing a chattel mortgage to read, "where the mortgagor *alleges* to reside at the time of the execution of the mortgage." Lien Law 1909, chapter 38, § 232, being chapter 33 of the Consolidated Laws. The failure to obtain and place in the mortgage such "allegement" has led to numerous more or less expensive litigation caused solely by the necessity of proving, as a fact, the residence of the mortgagor; for example, In re Pearlman (D. C.) 246 F. 874.

Moreover, as I have said, this construction of the statute seems to me to have been squarely decided contrary to the contentions of the libelant. I refer to the case of Robins Dry Dock & Repair Co. v. Steamship Susana et al. (Circuit Court of Appeals, Fourth Circuit, decided October 21, 1924) 2 F.(2d) 410, where the learned Circuit Judge, in writing the opinion of the court, has this to say:

"There is a state decision that, where a corporation is the owner of a ship, it may treat the port at which it does business as the home port, apparently upon the theory that for business purposes it must, or at all events may, be regarded as a resident of the place at which most of its shipping business is carried on. Moore v. Lincoln Park & S. S. Consolidated Co., 196 Pa. 519, 46 A. 857. However much of reasonableness there may be in this view, it is impossible to reconcile it with the long line of federal cases which have held that the residence of a corporation is in the state from which it holds its charter, and there would seem to be no sufficient reason to conclude that the words 'usually resides' in the navigation law shall receive another construction than that so habitually given them in other matters."

The reasoning and decision of the above case seem to compel a decision here that this mortgage was not duly filed and is therefore not valid or entitled to a preference against those lacking prior actual knowledge of it.

Accordingly, the construction or interpretation that the "residence" referred to is that mentioned in the certificate of incorporation seems to me to be not only in keeping with former decisions, but as best fitted after all is said and done to approximate that *certainty* as to constructive notice, in cases of corporations, which is the purpose of the statute.

I am not unaware of the hardship that is thus apparently imposed on the mortgagee in this case, especially in view of counsel's statement in their brief "until recent months the custom house at New York had informed inquirers that New York was the proper port at which to document vessels in cases where the vessel owner's principal office was in New York, even though the owner was incorporated in another state." It may well be that Congress may deem it better to change the law, but it is not for me to do so, especially where a long line of decisions up to only a month or so ago have construed the "home port" to be as here indicated, and where both the purpose of the statute and the conditions for investigation indicate no unusual or serious obstacle thereby.

The suggestion is in my mind that possibly it might be practical to allow the documentation of the vessel and recording of the mortgage by an owner at either the port nearest to the charter office or the actual principal place of business in the case of a corporation, or the alleged residence in the case of an individual provided that as to mortgage and other liens such acts should not constitute constructive notice thereof and to that extent be valid unless such collector, for a fee, or such lienor on payment of a proper charge, shall forthwith give immediate notice in brief outline as to port, etc., of such filing to some central office, say at Washington, thus giving a certain and definite place for a search.

This is, however, a matter for Congress.

I therefore am compelled to sustain the exceptions to the libel on the ground that the mortgage was not duly recorded and is therefore invalid against those not having actual notice, and thus the libel must be dismissed.