Mr. Justice NELSON
 

 delivered the opinion of the court,
 

 The act of Congress, July 29, 1850, on this subject, of the presentíase, is as follows:
 

 “ That no bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance, be recorded in-the office of the collector of customs, where such vessel is registered or enrolled.”
 

 The next section provides for recording these bills of sale, &c., and also certificates of discharge and cancellation in a proper book. No provision was made for any authentication of these instruments preparatory to their being recorded. They were received by the collector from the parties delivering them, and were recorded, with no proof of their verity, except from the execution of the same, as appeared on their face; and this, both as it respects the -bills of sale, mortgages,
 
 *651
 
 &e., and the discharge and cancellation of the same. And the law thus stood for some fifteen years. On .March 3,1865, it was enacted that “ no bill of sale, mortgage, hypothecation, conveyance, or discharge of mortgage, or other incumbrance of any vessel, shall be recorded, unless th'e same is duly acknowledged before a notary public, or other officer authorized to take acknowledgment of deeds.”
 

 Previous to this act of 1850, providing for the recording of bills of sale, mortgages, &c., of vessels, they were required to be filed, by the laws of many of the States, in the clerk’s office, or some place of public deposit in the town or city where the vendor or mortgagor resided, in order to protect the interest of the vendee or mortgagee against subsequent
 
 bond fide
 
 purchasers or mortgagees. And this practice continued in many places after the passage of the act of 1850, for abundant caution, on account of a doubt as to the effect that would or might be given to it as a recording act, from the very imperfect provisions of the law. There can be no-doubt, however, but that the system of recording these instruments in the collector’s office, at the home port of the vessel, furnishes a much readier opportunity to persons dealing in this species of property', to obtain a knowledge of the condition of the title, than by the former mode under the State law. We say the home port, because it is quite apparent'from the language of the act, “be recorded in the office of the collector of customs, where such vessel is registered or enrolled,” means the permanent registry or enrolment, which is at the port, “at or nearest to which the owner, if there be but one, or if more than one, the husband or acting and managing .owner of said' ship or vessel usually resides. And the name of the said ship or vessel, and the port to which she shall so belong, shall be painted on her stern, on a black ground, in white letters, of not less than three inches in length,” and, if found without such name and the name of the port, the owner is subject to a penalty of fifty dollars.
 
 *
 

 
 *652
 
 The same aGt provides for'a temporary registry,, when the owner acquires her in a different district from that in which he resides;, but this is to enable him to bring the vessel within the home district or port, whepe shé can obtain her permanent registry. The character of this temporary registry is expressed on the face of it,'and is delivered up to'the .collector on the issuing of the permanent registry, whose duty it is to return it to the collector that granted it.
 
 *
 

 So'a registered ■ vessel may be enrolled, or an enrolled vessel registered; on the master .giving up to the collector the registry or enrolment, as the casé may be; and if such vessel shall be in any other district than the one to which óhe belongs, the. collector of such district, upqn the master taking an oath that, according to his best knowledge and belief, the property remains as expressed in a. registry or enrolment proposed to be given up, and on giving the bond required, shall'make the exchanges above mentioned; but-the collector to whom the registry or enrolment is given, up, shall transmit the same to the Register of the Treasury, and the1 registry or enrolment granted in lieu thereof, shall, within ten days after the .arrival of such vessel within' the district to which she belongs, be delivered to the collector of said district, and be by him cancelled.
 
 †
 

 This exchange,of registry or enrolment may occur in any' part of a voyage or voyages, and the temporary registry of enrolment continues till the Vessel, in the regular course of her employment, arrives -at the port to which she belongs, where she may again obtain a fenewal of her permanent doeufnentary title. As we have said, we think it apparent that the collector’s office',in the district in which this temporary registry or enrolment is made, is not the office contemplated by the act o;f I860. The temporary papers are-made 'in the office where the vessel happens to be at the time of ■ the sale or exchange of the documentary title, and continues . only till her arrival at the port to which, she belongs. Her name, and the name of her home port, remains painted on
 
 *653
 
 her stern, notwithstanding -this temporary document, ■ and 'satisfies the-requirement of the act in that respect, and Both continue until a new lióme port is acquired by a change of ownership, requiring a permanent registry or enrolment on account of the different' residence of the owners, when the name of that port is substituted. And, confining the record to the hpme port, there is great propriety and convenience in requiring bills of sale, mortgages, &c., of the whole, or parts of a vessel, to be made matters of record in this office, as' in the registries there are the names of all the owners under oath, together with their residencies; and since the act of 1850,-containing also the part or proportion of such vessel belonging to each owner (§ 5). And in this same section it is provided that, “ in all bills of sale of vessel's registered or enrolled, shall- be set forth the part of the vessel owned by each -person selling, and the part conveyed to each’ person ■ purchasing.” And in this connection we may also mention, that in case.of the sale of a vessel, which can only be to a-, citizen or citizens of the-United States, and a new permaj- , nent registry becomes necessary, the former certificate of registry must be delivered to the collector to whom application is'made for the new registry,’ to be transmitted by him to the Kegister of the Treasurydo be cancelled; and in every such sale'or transfer of á vessel, there shall be some -instrument-in writing in the natpre of a bill of sale, which shall recite at length the certificate of the former registry, otherwise the ship or vessel shall be incapable of being registered anew.
 
 *
 
 And as this bill of sale is recorded in the collector’s office in which the new permanent registry is made, it affords information to any person examining it as to the former home port and collector’s office in.which the vessel had been previously registered, and where examination can be made for any bill of sale, mortgage, or other incumbrance,, upon , or against the vessel.
 

 It will bé seen, therefore, as the law now stands, there can be very little difficulty on the part of ;a purchaser or
 
 *654
 
 mortgagee in ascertaining the true condition of the title of > a vessel, as it respects written-evidences of the same, or of incumbrances thereon, from an examination of the records .of the collector’s office at the several home ports of the vessel, as the records of the last home port refers to the preceding one, .the last bill of sale incorporating into it a copy of' the previous certificate of registry. In this respect, the system of recording jn the collector’s office possesses very great advantages- over-the filing of these instruments in the clerks’ offices where the vendor or mortgagor happened to reside at the time, as no means exist, under this practice, by which' the subsequent purchaser or mortgagee, by any diligence, could obtain a knowledge of the aptuál condition of the title.
 

 We are aware that in the ease of
 
 Potter
 
 v.
 
 Irish,
 

 *
 

 the court came to the conclusion, upon an,examination of the acts on this subject, that bills of sale, mortgages, &<?., under the act of 1850, in-, order to protect.the title of the purchaser or mortgagee, should be recorded in the office .of' the collector of customs at the port of the last registry or enrolment, though not the home port of the vessel. And-the court jn the case of
 
 Chadwick
 
 v. Baker,
 
 †
 
 followed this decision. Our respect-for the courts rendering these decisions has led us to examine the several statutes upon which this question depends with more than usual care, and after th.e best consideration we have been able to give, we are obliged to differ with them.. Wo think the better construction of these statutes leads to the conclusion that the home port was the one in the contemplation of Congress at which these instruments were to be recorded, and is the more appropriate one in furtherance of the object for which the act was passed.
 

 The temporary registry or enrolment is at a collector’s office in a district where the owners do not reside, and is made without any reference to such residence. It is made at any collector’s office, and at any port within the limits of the United States where the vessel may happen to be at the time this temporary document is registered.
 

 
 *655
 
 While the home port pay be at the city of New. York, the temporary registry or enrolment may be made at New Orleans or San Francisco, or Portland, in Oregon, where it would be as inconvenient for the vendee or mortgagee to make a record of the bill of sale or mortgage as it would be for a person dealing in this species of property to acquire any notice of such record; whereas a record at the home port is within the district where the owners reside, and where negotiations or dealings in respect to this species of property would' naturally be conducted.
 

 Some .question is made as to the power of Congress over the title and próperty of vessels of the United States to such an extent as to enable it to pass a recording act.
 

 But, after the regulation of this species of property by the several acts of Congress to which we have referred,, and in respect to which there" has never been a question-, there can be very little hesitation in conceding the power to protect the rights of subsequent
 
 bond jide
 
 purchasers and mortgagees therein. ‘
 

 Ships or vessels of the United States are the creations of the legislation of Congress. None can be denominated such, or be entitled to the benefits or privileges thereof, except those registered or enrolled according to the act of September 1,1789;.and those which, after the last day of March, 1793, shall be registered or enrolled in pursuance of the act of 31st December, 1792,-and must be wholly owned by a citizen,’or citizens of .the United States, and to be commanded by a citizen of the same.
 
 *
 

 And none can be registered or enrolled unless built within the United- States before or after the 4th of July, 1776, and belonging wholly to a citizen, or citizens, of the United States, orj not built within said States, but on the 16th of May, 1789, belonging, and thence continuing to belong, toa citizen or citizens thereof; or ships or vessels captured from the enemy, in wrar, by a citizen, and.lawfully condemned as prize, or adjudged to be forfeited for a breach of the laws of
 
 *656
 
 . the United States,'and being wholly owned, by a citizen or ' citizens thereof.
 
 *
 

 - Ships or vessels npt brought within these provisions of the dots of Congress, and hot entitled to the benefits and.pjrivi- . leges thereunto belonging, are pf no more value as Ameri- . .ckn vessels than the wood and iron oht of which they are ' constructed. . Their substantial if not 'entire value consists ■in their'right to the character of .national vessels, añd, to 'have the protection of the national- flag .floating at their mast’s, head.- ■
 

 ‘ Congress having created,,as it were, this species of property, and conferred upon it, its chief value'under the’power ,' ..given in the Constitution'to.regulate commerce, we perceive 'no reason for entertaining any .serious doubt but'-that this, power may he extended to.the security .and protection' of the ' rights and title of all persons dealing therein. The judicial mind-seems to have generally taken this direction.
 
 †
 

 Decree reversed, and a
 

 Decree entered For the appellant. -
 

 *
 

 Act 31st December, 1792, § 3.
 

 *
 

 Act 31st December, 1792, § 11.
 

 †
 

 1 Stat. at Large, 288, §
 
 3
 

 *
 

 1 Stat. at Large, 294, § 14.
 

 *
 

 10 Gray, 416.
 

 †
 

 54 Maine, 9.
 

 *
 

 1 Stat. at Large, 287.
 

 *
 

 1 Stat. at Large, § 2, 288.
 

 †
 

 The Martha Washington, 25 Law Reporter, 22; Fontaine
 
 v.
 
 Beers, 19 Alabama, 722; Mitchell
 
 v.
 
 Steelman, 8 California, 363; Shaw v. McCandless, 36 Mississippi, 296.