SPAIN v. ST. LOUIS & S. F. R. CO.

(Circuit Court, E. D. Arkansas, E. D. March 13, 1907.)

1. CONSTRUCTION—PRESUMPTIONS.
    The presumption that statutes are constitutional will be indulged in until the contrary is clearly shown.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 46.]

2. COMMERCE—INTERSTATE COMMERCE—PROTECTION OF EMPLOYÉS.
    Congress has the power, under the commerce clause of the Constitution, to legislate for the safety and protection of employés engaged in interstate commerce, whether the transportation be on water or on land.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Commerce, § 3.]

3. SAME—PERSONAL INJURIES.
    It is within the power of Congress, under the commerce clause, to regulate the liability of a common carrier to its employés for personal injuries received while engaged in interstate transportation.

4. SAME—REGULATION OF COMMERCE.
    The act of Congress of June 11, 1906, c. 3073, 34 Stat. 232, relating to the liability of common carriers engaged in commerce between the states to their employés, as stated in its title, commonly called the "Federal Employers' Liability Act,". is a regulation of interstate commerce, and is within the Constitutional power of Congress to regulate commerce.

5. STATUTES—MASTER AND SERVANT—FEDERAL EMPLOYERS' LIABILITY ACT—INTRASTATE COMMERCE—PARTIAL INVALIDITY.
    The federal employers' liability act is not void because, as alleged, it applies equally to intrastate and interstate commerce, as its provisions are separable, so as to be valid when invoked by an employé engaged on a train actually employed in interstate traffic. The title of the act, which is the best summary of its purpose, removes any ambiguity that may be in the text.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, §§ 58–66.]

6. SAME—PARTIAL INVALIDITY.
    The federal employers' liability act is remedial and not penal, which fact takes it out of the rule laid down in the Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550, and other cases.

7. CONSTITUTIONAL LAW—PERSONS ENTITLED TO RAISE CONSTITUTIONAL QUESTIONS.
    The plaintiff in this case, who alleges that he was engaged at the time of the accident on a train engaged in interstate commerce, is within the rule of law that courts will not listen to an objection of unconstitutionality of an act by a party whose right it does not affect in the particular case on trial.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, §§ 39, 40.]

    (Syllabus by the Court.)

Armstrong & Gravette and J. T. Coston, for plaintiff.
W. J. Orr, for defendant.

TRIEBER, District Judge. The constitutionality of the act of Congress of June 11, 1906, c. 3073, 34 Stat. 232, generally known as the "Employers' Liability Act," is attacked upon two grounds: First, that Congress has no power to create and enforce liabilities growing out of the employment of servants by carriers, even if those carriers be engaged in interstate commerce; and, second, if it has such power,

the language of the act is so general as to include intrastate commerce, and both are so inseparably connected as to make the whole act unconstitutional.

In passing upon the constitutionality of an act, the courts are governed by certain well-settled rules. Statutes are always presumed to be constitutional, and this presumption will be indulged until the contrary is clearly shown; statutes will be so construed, so far as it is possible to do so, that they shall harmonize with the Constitution, to the end that they may be sustained. On the other hand, if the statute is clearly unconstitutional, the duty of the court is to so declare.

1. The power to regulate commerce among the several states is granted to Congress by the Constitution in terms as absolute as is the power to regulate commerce with foreign nations. Brown v. Houston, 114 U. S. 627, 630, 5 Sup. Ct. 1091, 29 L. Ed. 257; Bowman v. Railway Co., 125 U. S. 465, 482, 8 Sup. Ct. 689, 1062, 31 L. Ed. 700; Crutcher v. Kentucky, 141 U. S. 47, 58, 11 Sup. Ct. 851, 35 L. Ed. 649; Pittsburg Coal Co. v. Bates, 156 U. S. 577, 578, 15 Sup. Ct. 415, 39 L. Ed. 538.

"Definitions as to what constitutes 'interstate commerce' are not easily given so that they shall clearly define the full meaning of the term. We know from the cases decided in this court that it is a term of very large significance. It comprehends, as it is said, intercourse for the purposes of trade in any and all its forms, including transportation, purchase, sale, and exchange of commodities between the citizens of different states, and the power to regulate it embraces all the instruments by which such commerce may be conducted." Hopkins v. United States, 171 U. S. 578, 597, 19 Sup. Ct. 40, 47 (43 L. Ed. 290).

Ever since the decision of Gibbons v. Ogden, 22 U. S. 1, 6 L. Ed. 23, it has been held to be a term of the largest import, comprehending intercourse for the purposes of trade in any and all its forms, including transportation. For a full collation of the authorities on that subject, see the Lottery Cases, 188 U. S. 321, 23 Sup. Ct. 321, 47 L. Ed. 492.

Has Congress under that provision of the Constitution, section 8 of article 1, the power to enact legislation regulating the employment of those necessarily required to manage the vehicles necessary for the transportation of interstate commerce? That Congress has assumed, ever since the adoption of the Constitution, that, under the commerce clause, it possesses the power to regulate the employment of and legislate for the protection of those engaged on the vehicles used for interstate transportation, is evidenced by the fact that the first Congress which met after the adoption of the Constitution enacted a statute for the regulation and protection of those employed on merchant vessels, then practically the only means of transporting passengers, as well as goods and merchandise, in interstate or foreign commerce. By the act of July 20, 1790, 1 Stat. 131, the employment of seamen on the vessels engaged in interstate commerce was regulated, and from time to time Congress has added to and changed these acts. The various statutes may be found on pages 3061 to 3125, U. S. Comp. St. 1901. As late as 1852 Mr. Justice Curtis, in Cooley v. Board of Wardens, 53 U. S. 299, 361, 13 L. Ed. 996, stated that the validity of these acts had never been questioned.

That the power of Congress to regulate navigation depends solely on the commerce clause is beyond question. In Gibbons v. Ogden the question before the court was whether an act of the Legislature of the state of New York granting an exclusive right to navigate the waters of the state was repugnant to the national Constitution, and its invalidity was placed solely on the ground that navigation is commerce and therefore within the grant to Congress "to regulate commerce with foreign nations and among the several states and with the Indian tribes." In every case decided by the Supreme Court, as well as every other national court since then, the validity or invalidity of every act of Congress in any wise affecting navigation has been determined solely upon the commerce clause. To cite all these cases would serve no useful purpose, but an examination of a few of the most important cases will show that this is one of the few rules of law upon which there is not even an apparent conflict among the decisions of the courts. United States v. Coombs, 12 Pet. 78, 9 L. Ed. 1004; Cooley v. Board of Wardens, 53 U. S. 299, 13 L. Ed. 996; Pennsylvania v. Wheeling Bridge Co., 59 U. S. 421, 15 L. Ed. 435; Foster v. Davenport, 63 U. S. 244, 16 L. Ed. 248; Gilman v. Philadelphia, 70 U. S. 713, 18 L. Ed. 96; The Daniel Ball, 77 U. S. 557, 19 L. Ed. 999; Miller v. Mayor, 109 U. S. 385, 3 Sup. Ct. 228, 27 L. Ed. 971; Patterson v. Bark Eudora, 190 U. S. 169, 23 Sup. Ct. 821, 47 L. Ed. 1002; North Bloomfield, etc., Co. v. United States, 88 Fed. 664, 32 C. C. A. 84; The Chusan, 2 Story, 455, Fed. Cas. No. 2,717.

Mr. Justice Story, in his great work on the Constitution (section 1062), says on that subject:

"If commerce does not include navigation, the government of the Union has no direct power over that subject, and can make no law prescribing what shall constitute American vessels, or requiring that they shall be navigated by American seamen. Yet this power has been exercised from the commencement of the government; it has been exercised with the consent of all America; and it has always been understood to be a commercial regulation. The power over navigation, and over commercial intercourse, was one of the primary objects for which the people of America adopted their government, and it is impossible that the convention should not so have understood the word 'commerce' as embracing it. Indeed, to construe the power so as to impair its efficiency would defeat the very object for which it was introduced into the Constitution, for there cannot be a doubt that to exclude navigation and intercourse from its scope would be to entail upon us all the prominent defects of the confederation, and subject the Union to the ill-adjusted systems of rival states, and the oppressive preferences of foreign nations in favor of their own navigation."

In The Chusan, Mr. Justice Story, in speaking of that subject, says:

"The power to regulate commerce includes the power to regulate navigation with foreign nations and among the states, and it is an exclusive power in Congress. This, I conceive, has been fully established by the Supreme Court in Gibbons v. Ogden, 9 Wheat. (U. S.) 193, 6 L. Ed. 23 and the doctrine stands, as I conceive, upon grounds which cannot be shaken without endangering the interests of the whole Union, if not the very existence of the Constitution as a frame of government for the professed objects and purposes which it was intended to accomplish. Now, there cannot be a doubt that the prescribing of rules for the shipping of seamen and the navigation of vessels engaged in foreign trade, or trade between the states, is a regulation of commerce. In what respect does the exercise of a power to regulate, control, or extinguish the

liens given by the maritime law for materialmen upon foreign vessels differ from the power to regulate the shipping of seamen or the navigation of foreign vessels? Each is a regulation of foreign commerce or commerce among the states."

In The Daniel Ball the act of Congress of July 7, 1838, 5 Stat. 304, and the amendatory act of August 30, 1852, 10 Stat. 61, imposing a penalty on steam vessels to transport passengers or freight on any of the navigable waters of the United States without first having procured a license and complied with other provisions of the acts of Congress, were before the court. The issues determined were what constituted navigable waters of the United States, subject to the control of Congress, under the Commerce clause, and it was unanimously held:

"And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the states, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other states or foreign countries in the customary modes in which such commerce is conducted by water."

And on page 565 of 77 U. S. (19 L. Ed. 999) the court say:

"The fact that several different and independent agencies are employed in transporting the commodity, some acting entirely in one state, and some acting through two or more states, does in no respect affect the character of the transaction. To the extent in which each agency acts in that transportation, it is subject to the regulation of Congress."

In North Bloomfield, etc., Co. v. United States, an act of Congress regulating hydraulic mining in California, to the end that navigable waters should not be obstructed, was attacked as unconstitutional. But the United States Circuit Court of Appeals for the Ninth Circuit, in overruling this contention, held that the power of Congress to pass the act in question under the commerce clause was undoubted.

But it is claimed that such legislation can only be sustained under the police power; that that power is vested in the states solely and not in the general government, and therefore a regulation for the protection of employés, such as is attempted to be given by this act, can only be exercised by the states. That Congress might legislate under the commerce clause touching liability for torts or the protection of passengers and employés has been intimated by the Supreme Court in a number of cases.

In Sherlock v. Alling, 93 U. S. 99, 103 (23 L. Ed. 819), it was said:

"It is true that the commercial power conferred by the Constitution is one without limitation. It authorizes legislation with respect to all the subjects of foreign and interstate commerce, the persons engaged in it, and the instruments by which it is carried on. And legislation has largely dealt, so far as commerce by water is concerned, with the instruments of that commerce. It has embraced the whole subject of navigation, prescribed what shall constitute American vessels, and by whom they shall be navigated; how they shall be registered or enrolled, and licenses; * * *. Since steam has been applied to the propulsion of vessels, legislation has embraced an infinite variety of further details, to guard against accident and consequent loss of life.

"The power to prescribe these and similar regulations necessarily involves the right to declare the liability which shall follow their infraction. Whatever, therefore, Congress determines, either as to a regulation or the liability for its infringement, is exclusive of state authority. But with reference to a great variety of matters touching the rights and liabilities of persons engaged

in commerce, either as owners or navigators of vessels, the laws of Congress are silent, and the laws of the state govern. * * * Until Congress, therefore, makes some regulation touching the liability of parties for marine torts resulting in the death of the persons injured, we are of opinion that the statute of Indiana applies, giving a right of action in such cases to the personal representatives of the deceased, and that, as thus applied, it constitutes no encroachment upon the commercial power of Congress."

In Smith v. Alabama, 124 U. S. 465, 479, 8 Sup. Ct. 564, 569 (31 L. Ed. 508), a statute of the state requiring locomotive engineers to be examined and licensed by the state authorities was attacked as unconstitutional, so far as it applied to engineers in charge of locomotives engaged in interstate commerce. In sustaining the constitutionality of the act, Mr. Justice Matthews, who delivered the opinion of the court, said:

"It would, indeed, be competent for Congress to legislate upon its subject-matter, and to prescribe the qualifications of locomotive engineers for employment by carriers engaged in foreign or interstate commerce."

In Railroad Co. v. New York, 165 U. S. 628, 632, 17 Sup. Ct. 418, 420 (41 L. Ed. 853), the validity of a statute of the state of New York regulating the heating of steam passenger cars on trains, including those engaged in interstate traffic, was before the court, the contention being that the statute was repugnant to the commerce clause of the national Constitution; and it was held:

"Until displaced by such national legislation as Congress may rightfully establish, under its power to regulate commerce with foreign nations and among the several states, the validity of the statute, so far as the commerce clause of the Constitution of the United States is concerned, cannot be questioned."

In Chicago, etc., Railway Co. v. Solan, 169 U. S. 133, 137, 18 Sup. Ct. 289, 291 (42 L. Ed. 688), the court say:

"So long as Congress has not legislated upon the particular subject, they (the statutes of the state) are rather to be regarded as legislation in aid of such commerce," etc.

In Western Union Telegraph Co. v. James, 162 U. S. 650, 661, 16 Sup. Ct. 934, 40 L. Ed. 1105, the same rule was applied to state legislation affecting telegraph companies.

But if there ever was any room for doubt as to the power of Congress to enact such legislation, it has been removed by what was decided in Patterson v. Bark Eudora, 190 U. S. 169, 175, 23 Sup. Ct. 821, 822 (47 L. Ed. 1002). In that case the constitutionality of the act of Congress of December 21, 1898, c. 28, §§ 3, 24, 30 Stat. 755, 763 [U. S. Comp. St. 1901, pp. 3076, 3080], making it unlawful to pay seamen wages in advance, was questioned. It was contended:

"That, even if the contract be one subject to restraint under the police power, that power is vested in the states and not in the general government, and any restraint, if exercised at all, can only be exercised by the state in which the contract is entered into; that the only jurisdiction possessed by Congress in respect to such matters is by virtue of its power to regulate commerce, interstate and foreign; that the regulation of commerce does not carry with it the power of controlling contracts of employment by those engaged in such service, any more than it includes the power to regulate contracts for service on interstate railroads, or for the manufacture of goods which may be intended for interstate or foreign commerce."

But Mr. Justice Brewer, in answer to this contention, said:

"Neither do we think there is in it any trespass on the rights of the states. No question is before us as to the applicability of the statute to contracts of sailors for service wholly within the state. We need not determine whether one who contracts to serve on a steamboat between New York and Albany, or between any two places within the limits of a state, can avail himself of the privileges of this legislation, for the services contracted for in this case were to be performed beyond the limits of any single state and in an ocean voyage."

The expression of the court that "contracts with sailors for their services are exceptional in their character, and may be subjected to special restrictions for the purpose of securing the full and safe carrying on of commerce on the water" must be understood to refer solely to the propriety of the legislation and not the power, for no one will contend now that the commerce clause of the Constitution grants greater power to Congress over the commerce carried on by water than over that transported by land.

That very question was before the court in Re Debs, 158 U. S. 564, 589, 15 Sup. Ct. 900, 908 (39 L. Ed. 1092), and the court there said:

"It is said that the jurisdiction heretofore exercised by the national government over highways has been in respect to waterways—the natural highways of the country—and not over artificial highways such as railroads; but the occasion for the exercise by Congress of its jurisdiction over the latter is of recent date."

And, after discussing the subject fully, the court concludes, on page 591 of 158 U. S., page 909 of 15 Sup. Ct. (39 L. Ed. 1092):

"The Constitution has not changed. The power is the same. But it operates to-day upon modes of interstate commerce unknown to the fathers, and it will operate with equal force upon any new modes of such commerce which the future may develop."

In the Lottery Cases, 188 U. S. 321, 356, 23 Sup. Ct. 321, 327 (47 L. Ed. 492), Mr. Justice Harlan said:

"In this connection it must not be forgotten that the power of Congress to regulate commerce among the states is plenary, is complete in itself, and is subject to no limitations except as may be found in the Constitution."

And in Addyston Pipe & Steel Co. v. United States, 175 U. S. 211, 229, 20 Sup. Ct. 96 (44 L. Ed. 136), the same objection was made that the Sherman anti-trust act of July 2, 1890, was an interference with the rights to contract, but was by the court overruled.

In White's Bank v. Smith, 74 U. S. 646, 19 L. Ed. 211, the act of July 29, 1850, providing for the recording of vessels, was sustained as a proper exercise of the powers of Congress under the commerce clause of the Constitution. And so was the limited liability act of Congress sustained in Providence, etc., Co. v. Hill Mfg. Co., 109 U. S. 578, 3 Sup. Ct. 379, 617, 27 L. Ed. 1038, and in United States v. Boston & Albany Railway (D. C.) 15 Fed. 209, section 4386 of the Revised Statutes, regulating the transportation of live stock, was sustained under the commerce clause.

In United States v. Freight Association, 166 U. S. 290, 312, 17 Sup. Ct. 540, 548 (41 L. Ed. 1007), the court say:

"Railroad companies are instruments of commerce, and their business is commerce itself. State Freight Tax Case, 15 Wall. (U. S.) 232, 275, 21 L. Ed. 146; Telegraph Co. v. Texas, 105 U. S. 460, 464, 26 L. Ed. 1067. An act which prohibits the making of every contract, etc., in restraint of trade or commerce among the several states, would seem to cover by such language a contract between competing railroads, and relating to traffic rates for the transportation of articles of commerce between the states, provided such contract by its direct effect produces a restraint of trade or commerce."

These authorities clearly sustain the power of Congress under the commerce clause of the Constitution to legislate for the safety and protection of employés engaged in interstate commerce, whether the transportation be by water or land.

2. Does the act also regulate intrastate commerce, and, if so, is the latter so inseparably connected with the other as to condemn the entire act? Assuming, but not deciding, that the act is broad enough to include all servants of a common carrier engaged in interstate trade, including those employed solely in transportation within one state and others not employed in transportation at all, the main question is whether it is not separable so as to be valid when invoked by one actually employed in interstate traffic, as the plaintiff alleges in his complaint he was at the time of the injury.

The authorities relied upon by learned counsel for the defendant to sustain their contentions are United States v. Reese, 92 U. S. 214, 23 L. Ed. 563; Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550; United States v. Harris, 106 U. S. 629, 1 Sup. Ct. 601, 27 L. Ed. 290; Baldwin v. Franks, 120 U. S. 678, 7 Sup. Ct. 656, 763, 32 L. Ed. 766; and the Virginia Coupon Cases, 114 U. S. 270, 5 Sup. Ct. 903, 962, 29 L. Ed. 185.

A careful examination of the first four cases will show that the acts construed and declared invalid in those cases were all penal statutes, and that the court laid great stress on that fact.

In United States v. Reese, which was an indictment under the national election laws, the court say:

"We are, therefore, directly called upon to decide whether a penal statute," etc., page 221 of 92 U. S. (23 L. Ed. 563).

In the Trade-Mark Cases the parties were indicted for violation of the trade-mark statute. In that case, in answer to the contention of the counsel for the government, that as Congress had power to regulate trade-marks used in commerce with foreign nations and among the several states, these statutes should be held valid in that class of cases, if no further, the court said:

"To this there are two objections: First, the indictments in these cases do not show that the trade-marks which are wrongfully used were trade-marks used in that kind of commerce. Secondly, while it may be true that when one part of a statute is valid and constitutional, and another part is unconstitutional and void, the court may enforce the valid part where they are distinctly separable so that each can stand alone, it is not within the judicial province to give to the words used by Congress a narrower meaning than they are manifestly intended to bear in order that crimes may be punished which are not described in language that brings them within the constitutional power of that body." Page 98 of 100 U. S. (25 L. Ed. 550).

In United States v. Harris the defendant was indicted under the provisions of section 5519 of the Revised Statutes [U. S. Comp. St. 1901,

p. 3714], and the court followed the rule announced in United States v. Reese, citing the excerpt from that case hereinbefore set out as the reason for its conclusions.

Baldwin v. Franks was also a criminal case for violation of section 5519, Rev. St., the statute declared unconstitutional in the Harris Case, the court saying on the subject of separability:

"This statute, considered as a statute punishing conspiracies in a state, is not of that character, for in that connection it has no parts within the meaning of the rule. Whether it is separable, so that it can be enforced in a territory, though not in a state, is quite another question, and one we are not now called on to decide." Page 685 of 120 U. S., page 659 of 7 Sup. Ct. (32 L. Ed. 766).

In that case, the court, in distinguishing Packet Co. v. Keokuk, 95 U. S. 80, 24 L. Ed. 377, said:

"That was not a penal statute, but only a city ordinance regulating wharfage, and the suit was civil in its nature." Page 688 of 120 U. S., page 661 of 7 Sup. Ct. (32 L. Ed. 766).

That the employers' liability act is a remedial and not a penal act must be deemed to have been settled by Johnson v. Southern Pacific Railway Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363.

The only other case cited is the Virginia Coupon Cases. Those were civil actions arising out of the bond legislation of that state. The various acts before the court in that case were, as said by the court, "but a single scheme, the undisguised object of which is to enable the state to rid itself of a considerable portion of its public debt and to place the remainder on terms to suit its own convenience, without regard to the obligation it owes to its creditors"; and the court held:

"The scheme of the whole is indivisible. It cannot be separated into parts. It must stand or fall together. The substantive part of it, which forbids the tax collector to receive coupons in payment of taxes, as we have already declared, as, indeed, on all sides is admitted, cannot stand, because it is not consistent with the Constitution. That which is merely auxiliary to the main design must also fall with the principal of which it is merely an incident." Page 304 of 114 U. S., page 921 of 5 Sup. Ct. (29 L. Ed. 185).

The correctness of that decision upon the facts is unassailable, as it is based upon the well-settled rule that a statute in part unconstitutional, if the provisions are so mutually connected with and dependent on each other as conditions, considerations, or compensations for each other as to warrant a belief that the Legislature intended them as a whole, and if all could not be carried into effect, the Legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are dependent, conditional, or connected must fall with them. Allen v. Louisiana, 103 U. S. 80, 26 L. Ed. 318. But it is equally well settled that if a part of a statute is unconstitutional the remainder is not void unless all the provisions are connected in the subject-matter, dependent on each other, operating together with the same purpose, or otherwise connected together in meaning that it cannot be presumed that the Legislature would have passed one without the other. Packer Co. v. Keokuk, 95 U. S. 80, 24 L. Ed. 377; Tiernan v. Rinker, 102 U. S. 123, 26 L. Ed. 103; Unity v. Burrage, 103 U. S. 447, 26 L. Ed. 405; Railroad Co. v. Schutte,

103 U. S. 118, 142, 26 L. Ed. 327; McCullough v. Virginia, 172 U S. 102, 112, 19 Sup. Ct. 134, 43 L. Ed. 382.

In McCullough v. Virginia, the court, in passing upon this question, declared the true rule to be:

"It is elementary law that every statute is to be read in the light of the Constitution. However broad and general its language, it cannot be interpreted as extending beyond those matters which it was within the constitutional power of the Legislature to reach. It is the same rule which obtains in the interpretation of any private contract between individuals. That, whatever may be its words, is always to be construed in the light of the statute of the law then in force, of the circumstances and conditions of the parties. So, although general language was introduced into the statute of 1871, it is not to be read as reaching to matters in respect to which the Legislature had no constitutional power, but only as to those matters within its control."

In Railroad Co. v. Schutte the court said:

"Under these circumstances, etc., the striking out is not necessarily by erasing words, but it may be by disregarding the unconstitutional provision and reading the statute as if the provision was not there." Page 143 of 103 U. S. (26 L. Ed. 327).

Applying these rules to the act before the court, is there any room for the presumption that Congress would not have passed the act unless it could be applied to all employés, including those not engaged on trains employed in interstate transportation or not engaged in transportation at all? If the act itself is ambiguous on that subject, reference to the title will at once remove it. That title is, "An Act Relating to Liability of Common Carriers in the District of Columbia and Territories and Common Carriers Engaged in Commerce between the States and Foreign Nations." That in cases of this kind the title of the act, as well as the circumstances surrounding its enactment, as exhibited in public documents, may be referred to, is well settled. Coosaw Mining Co. v. South Carolina, 144 U. S. 550, 563, 12 Sup. Ct. 689, 36 L. Ed. 537; Johnson v. Southern Pacific Railway Co., 196 U. S. 1, 19, 25 Sup. Ct. 158, 49 L. Ed. 363; Petri v. Creelman Lumber Co., 199 U. S. 487, 495, 26 Sup. Ct. 133, 50 L. Ed. 281; Millard v. Roberts, 202 U. S. 429, 437, 26 Sup. Ct. 674, 50 L. Ed. 1090.

In Millard v. Roberts the court say:

"The titles of the acts are the best brief summary of their purposes."

Another rule of law applicable to the case at bar is that courts will not listen to an objection made to the constitutionality of an act by a party whose right it does not affect in the particular case on trial, and who has, therefore, no interest in defeating it. Supervisors v. Stanley, 105 U. S. 305, 311, 26 L. Ed. 1044; In re Garnett, 141 U. S. 1, 12, 141 U. S. 1, 35 L. Ed. 631; Clark v. Kansas City, 176 U. S. 114, 118, 20 Sup. Ct. 284, 44 L. Ed. 392; Patterson v. Bark Eudora, 190 U. S. 169, 176, 23 Sup. Ct. 821, 47 L. Ed. 1002. Missouri v. Dockery, 191 U. S. 170, 24 Sup. Ct. 53, 48 L. Ed. 133.

In Clark v. Kansas City the court approved the ruling of the Supreme Court of Kansas that "a court will not listen to an objection made to the constitutionality of an act by a party whose right it does not affect, and who has, therefore, no interest in defeating it"; the court saying:

"We concur in this view, and it would be difficult to add anything to its expression."

In Re Garnett it was held that:

"It is unnecessary to inquire whether the section is valid as to all kinds of vessels named in it; if it is valid as to the kind to which the steamboat Katie belongs, it is sufficient for the purpose of this case."

In Patterson v. Bark Eudora, Mr. Justice Brewer said:

"We need not determine whether one who contracts to serve on a steamboat between New York and Albany, or between any two places within the limits of a state, can avail himself of the privileges of this legislation, for the services contracted for in this case were to be performed beyond the limits of any single state and in an ocean voyage."

So, as stated by Judge Cooley:

"A legislative act may be entirely valid as to some classes of cases and clearly void as to others. * * * If there are any exceptions to this rule, they must be cases only where it is evident from a contemplation of the statute and of the purpose to be accomplished by it that it would not have been passed at all except as an entirety, and that the general purpose of the Legislature will be defeated if it shall be held valid as to some classes and void as to others." Cooley Const. Lim. p. 250 (7th Ed.).

So in the case at bar the injury suffered by the plaintiff, as alleged in the complaint, was while he was engaged in labor performed on a train engaged in interstate commerce, and therefore brings this case within the foregoing rules of law.

For these reasons, I am of the opinion that the act is constitutional.