## THE LINCOLN LAND.

(District Court, D. Massachusetts. August 28, 1923. On Rehearing, January 10, 1924.)

No. 2288.

**1. Admiralty ⊜1—Congress may enlarge jurisdiction; Ship Mortgage Act held constitutional.**

Congress has power to enlarge the jurisdiction of the courts of admiralty by altering the maritime law to embrace new causes of action or causes not previously considered maritime, and Ship Mortgage Act 1920, § 30, subsecs. D and K (Comp. St. Ann. Supp. 1923, §§ 8146¼kkk, 8146¼n), providing for preferred mortgages and conferring on courts of admiralty jurisdiction in rem to enforce the same is within such power and valid.

### On Rehearing.

**2. Shipping ⊜5, 30½—Statutes held not repealed by Ship Mortgage Act; "vessel of the United States."**

Rev. St. §§ 4131, 4311, 4170 (Comp. St. §§ 7707, 8057, 7751), providing that only vessels registered according to law or licensed shall be vessels of the United States, and that on the sale of·a vessel she shall be registered anew, "otherwise she shall cease to be deemed a vessel of the United States," were not repealed or modified by Ship Mortgage Act 1920, § 30, subsec. B, subd. 4 (Comp. St. Ann. Supp. 1923, § 8146¼k), providing that a vessel lawfully documented shall be held to continue to be so documented until its documents are surrendered with the approval of the Shipping Board, which section must be construed to apply to vessels which, when conveyed, are subject to a valid preferred mortgage and for the purposes of such mortgage.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Vessels of the United States.]

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Shipping ☞33—Purchase-money mortgage, to have status of preferred mortgage, must be recorded at port of registry of new owner.**

When a registered vessel is sold to a resident of another state, it ceases to be a vessel of the United States until registered anew at the port of the new owner, and a mortgage back for purchase money, to have the status of a valid preferred mortgage, under Ship Mortgage Act 1920, § 30, subsec. B (Comp. St. Ann. Supp. 1923, § 8146¼k), must be recorded in the office of the collector at the new port of registry.

In Admiralty. Suit by Benno Levison and others against the steamship Lincoln Land. On determination of libelants' claim to preferred mortgage. Claim denied.

Friedman & Atherton and Lee M. Friedman, all of Boston, Mass. (Curley C. Hoffpauir, of New York City, of counsel), for libelants.

Fitz-Henry Smith, Jr., of Boston, Mass., for petitioners Kehoe & Dougherty.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for petitioner Godley & Griffin, Bertelsen, and Peterson.

Louis B. King, of Boston, Mass., for petitioner Benno Levison.

Wendell P. Murray, of Boston, Mass., for petitioners Judis, Hampton Roads Water Co., and E. Hogshire.

Pierre M. Brown, of New York City, for Schoonmaker-Conners Co., Inc.

Joseph D. Taylor, of Boston, Mass., for petitioners Folvig and others and Axel Rasmussen.

BREWSTER, District Judge. This is a proceeding in rem, brought by the mortgagees named in a mortgage covering the steamship Lincoln Land, formerly known as the steamship Cartona, which will be hereinafter referred to as the Lincoln Land. Libelants invoke the jurisdiction conferred by subsection K of the Ship Mortgage Act of 1920 (Act June 5, 1920, § 30 [Comp. St. Ann. Supp. 1923, § 8146¼n]) upon this court to enforce a mortgage lien by suit in rem in admiralty.

By order of court the steamship has been sold, and there is now in court about $7,000. Intervening petitions have been filed, presenting claims aggregating about $4,300 for supplies furnished subsequent to the date of the mortgage, and one petition presented for lighterage service furnished prior to said date, amounting to about $1,500. The libelants claim that they, as holders of a preferred mortgage under the Ship Mortgage Act, are entitled to the proceeds of sale now in the hands of the court. The intervening claimants deny that the mortgage is preferred, and assert that the mortgagees' rights are subordinate to those of such claimants. It becomes necessary, therefore, to determine who is entitled to the funds now in court, and this determination requires a consideration of the status of the mortgage held by libelants. The essential facts are not in dispute.

The Lincoln Land is a steamship built in the United States, with a gross tonnage of 2,916 tons. By bill of sale, dated February 2, 1922, and recorded with the collector of customs of the port of New York February 18, 1922, the Atlantic Gulf Steamship Company, Inc., transferred to Bertha Hilk Daly, a citizen residing in New York, the Lin-

coln Land. On March 3, 1922, a consolidated certificate of enrollment and license (Act April 24, 1906 [Comp. St. §§ 8066, 8073, 8067]) was issued to Bertha H. Daly as sole owner, by which the steamship was licensed to carry on the coasting trade for one year from date of license.

The libelants had loaned money to the Atlantic Gulf Steamship Company, Inc., the payment of which the said Bertha H. Daly had guaranteed. Pursuant to an agreement between the parties, a bill of sale was given to the libelants by Bertha Hilk Daly, dated March 6, 1922. The libelants are both citizens of the United States. They then resided in New York, and carried on business in New York under the firm name of Levison & Co. They caused the bill of sale of the Lincoln Land to be recorded in the port of New York on June 21, 1922, but it does not appear that any new certificate of enrollment or license was ever issued to them as new owners. They never operated the steamship. On June 21, 1922, the same day the bill of sale to them was recorded, they executed a bill of sale of the steamship to the Indian Navigation & Transportation Company, Inc., a corporation organized under the laws of Delaware. A purchase-money mortgage for $43,500, covering the steamship and her appurtenances, was given back by the Indian Navigation & Transportation Company, Inc., to the libelants. Both the bill of sale to the corporation and the mortgage made by it were on June 22, 1922, recorded with the collector of the port of New York. So far as is disclosed by the evidence, neither were recorded elsewhere. The mortgage was duly indorsed on the ship's documents July 14, 1922. The mortgagors defaulted, and the mortgagees declared the full principal sum due and payable. If their mortgage has a preferred status, it is clear that their lien takes priority over those for supplies and repairs furnished subsequent to July 14, 1922.

It is urged on behalf of the intervening petitioners that the mortgage in question does not have the preferred status given by subsection M of the Ship Mortgage Act, being Comp. St. Ann. Supp. 1923, § 8146¼nnn, (a) because the Congress has no constitutional authority to give to a mortgage on a vessel preferred status as a maritime lien; (b) because the mortgage was not recorded at port of documentation, as required by the act; and (c) because the act only gives preferred status to mortgages on vessels of the United States, and that the Lincoln Land was not a vessel of the United States when the mortgage was made.

[1] First, as to the constitutionality of the so-called Ship Mortgage Act: Proctors for libelants have filed with me a brief devoted largely to a very learned presentation of the law and the reasons for upholding the constitutionality of the act. After a careful consideration of the cases cited and arguments advanced, I am satisfied that Congress, under its power to regulate commerce, may legislate respecting mortgages on ships, and may give to such mortgages preferred status. It is not so clear that it could give to this court, as a court of admiralty, jurisdiction to enforce or recognize such mortgages as preferred maritime liens. However, I am inclined to the opinion that this extension of jurisdiction is a proper one. The J. E. Rumbell, 148

U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345; The Lottawanna, 21 Wall. 558, 22 L. Ed. 654. In the early case of The John Jay, 17 How. 399, 15 L. Ed. 95, it was intimated that Congress had power to alter the rule that mortgages on ships were nonmaritime contracts and unenforceable in admiralty. Until a higher court has announced a contrary doctrine, I am quite prepared to follow the learned District Judge in the Eastern district of Virginia, who has said in the case of The Oconee, 280 Fed. 927, 933, that, "Congress having now acted, the omission existing in the law as it formerly stood is supplied, and the act must be held within the power of Congress, and therefore constitutional." I cannot, therefore, relegate the rights of the mortgagees to an inferior position on the ground that the act under which the rights are asserted is beyond the authority of Congress to enact.

But the other objections raised to the priority of libelants' lien are not easily disposed of. Under the Ship Mortgage Act of 1920 a mortgage, to have the preferred status, must be a valid mortgage, which at the time it is made includes the whole of any vessel of the United States of 200 gross tons or upwards, must be recorded "as provided in subsection C" of the act, and must be indorsed upon the ship's documents (subsection D of section 30 of Act of June 5, 1920 [Comp. St. Ann. Supp. 1923, §§ 8146¼kk, 8146¼kkk]). The mortgage was endorsed upon the ship's documents, but it is denied that it was recorded as provided in subsection C, and that it included a vessel of the United States.

Subsection C is as follows:

"(a) No sale, conveyance, or mortgage which, at the time such sale, conveyance, or mortgage is made, includes a vessel of the United States, or any portion thereof, as a whole or any part of the property sold, conveyed, or mortgaged shall be valid, in respect to such vessel, against any person other than the grantor or mortgagor, his heir or devisee, and a person having actual notice thereof, until such bill of sale, conveyance, or mortgage is recorded in the office of the collector of customs of the port of documentation of such vessel. * * *"

The act in subsection B defines the term "port of documentation" as the port at which the vessel is documented, and further defines the word "documented" to mean "registered or enrolled or licensed under the laws of the United States, whether permanently or temporarily." These definitions control in any interpretation of the act. The Lincoln Land, under her former name, Cartona, had been permanently enrolled and licensed under the laws of the United States by her former owner, Bertha Hilk Daly, at the port of New York. Obviously the port of New York was the port of documentation when Bertha H. Daly gave her bill of sale to libelants. As the libelants were residents of New York, it is equally true that New York was the only port which could be deemed to be the port of documentation. Clearly, recording in any other port would not satisfy the requirement of subsection C. It is true that the libelants did not surrender the certificate of enrollment and license, or take out a new one. They had no occasion to do so, as they did not operate the steamship, and apparently did not acquire her with any intention of so doing. The bill of sale to them was properly recorded in the port of New York. This was the situation when libelants sold the vessel to the Indian Navigation & Transportation Com-

pany, Inc., and took back the mortgage in question, both of which were promptly recorded in the office of the collector of customs of the port of New York. It is urged that, inasmuch as the Indian Navigation & Transportation Company, Inc., was a Delaware corporation, and consequently resided in that state, the Lincoln Land no longer belonged to the port of New York, and the record in that port did not satisfy the statute. Fairbanks Steam Shovel Co. v. Wills, 240 U. S. 642, 36 Sup. Ct. 466, 60 L. Ed. 841.

It seems settled on the authorities that, upon the sale of the Lincoln Land to a Delaware corporation, the port of New York ceased to be the home port of the vessel. Yost v. Lake Erie Transportation Co., 112 Fed. 746, 50 C. C. A. 511; The Havana, 64 Fed. 496, 12 C. C. A. 361; The New Brunswick (D. C.) 125 Fed. 567. But I am not prepared to agree that the Ship Mortgage Act of 1920 was not satisfied by the record in the port of New York.

At the time of the sale the port of New York was the home port of the grantors and was the port where the vessel had been in fact documented. It was therefore the port, and the only port, which answered the definition of the statute, and the bill of sale to the Indian Navigation & Transportation Company, Inc., was, in my opinion, properly recorded there. The mortgage, being given contemporaneously to secure the purchase price, was also properly recorded in New York. The duty of enrolling or registering the vessel after the sale did not rest upon the libelants, nor can it be said that the preferred status of their mortgage depended upon the performance of that duty by the corporation. We are dealing only with the place where constructive notice of the lien shall be given by recording. The statute provides that it shall be recorded at that port which is the port of documentation at the time of the mortgage, not where the vessel may later be documented by the mortgagee. The fact that no document was ever issued to libelants is not necessarily fatal, especially in view of the provision of subsection B, defining the term "vessel of the United States" as "any vessel documented under the laws of the United States and such vessel shall be held to continue to be so documented until its documents are surrendered with the approval of the board" (United States Shipping Board). I am of the opinion, therefore, that the mortgage should not be denied a preferred status on the ground that it was not recorded as required by law. I am aware that the conclusion is apparently in conflict with opinions handed down in White's Bank v. Smith, 7 Wall. 646, 19 L. Ed 211, and in Johnson v. Merrill, 122 Mass. 153; but it may be proper to observe that the court in these cases was dealing with R. S. § 4192, a statute expressly repealed by subsection X of the Ship Mortgage Act of 1920 (Comp. St. Ann. Supp. 1923, § 8146¼rr), and did not have before it the definitions of the later act, in the light of which that act must be construed. See Moore v. Lincoln Park & Steamboat Consolidated Co., 196 Pa. 519, 46 Atl. 857.

Furthermore, in view of the statutory definition of the term "vessel of the United States," the Lincoln Land must be held to be such a vessel. It appears that she had been permanently enrolled under the laws of the United States, and therefore "documented," and, as no evi-

dence is offered tending to show that her documents had been surrendered, she must be held to continue to be so documented, and at the time of sale to be a vessel of the United States, within the provision of the Ship Mortgage Act. Subject, therefore, to any liens which take precedence over a preferred mortgage, as provided in subsection M of the act, the libelants are entitled, as holders of a preferred mortgage, to the proceeds now in court.

## On Rehearing.

On August 28, 1923, I rendered the foregoing opinion, in which I sustained the constitutionality of the Ship Mortgage Act of 1920 (Act June 5, 1920, § 30 [Comp. St. Ann. Supp. 1923, §§ 8146¼jjj to 8146¼rr) and held that libelants' mortgage was a preferred lien under the act.

After rendering this opinion, I granted a rehearing at the request of three intervening petitioners, Bertelsen & Petersen Engineering Company, James J. Kehow, Inc., and Frank J. Doherty, Inc. At this rehearing arguments were addressed to me for the first time assailing the constitutionality of the act, and the question of the validity of libelants' mortgage as a preferred mortgage was further considered.

I am able, therefore, to consider the question of constitutionality in the light afforded, not only by the brief of libelants, but also by the equally able presentation of grounds for declaring the act unconstitutional. But where Congress has expressed by statute its intention to accomplish a certain purpose, this court ought not to declare the act to be beyond the legislative powers of Congress, unless a very clear case is presented. Inasmuch as my opinion, after reconsideration, still inclines toward the constitutionality of the act, I shall not revise my decision on that point. See The Nanking (D. C.) 292 Fed. 642.

I am compelled, however, after careful consideration of the arguments presented at the rehearing and further examination into the federal statutes bearing upon the issues involved, to reconsider and revise that part of my opinion which deals with the status of the Lincoln Land as a vessel of the United States, and to modify somewhat statements appearing in the opinion relative to the recording of instruments of conveyance under the act.

[2] In my earlier opinion I held that the Lincoln Land was a vessel of the United States. This conclusion was based upon the undisputed fact that the vessel had been duly licensed and enrolled in the port of New York by a former owner, who resided in New York, and also upon a construction of subsection B (4) of the Ship Mortgage Act of 1920, which I am now fully satisfied was never intended by those who enacted the law, and cannot be justified when considered with reference to other maritime acts, as well as to other provisions of the act of 1920.

For example: Section 4131 of the Revised Statutes (Comp. Stat. § 7707) provides that only vessels registered pursuant to law, except such as shall be duly qualified according to law for carrying on the coasting or fishing trade, shall be deemed vessels of the United States, and that no vessel shall enjoy the benefits and privileges of a vessel

of the United States longer than it shall continue to be owned wholly by a citizen or citizens of the United States or a corporation created under the laws of the United States. Section 4311 of the Revised Statutes (Comp. St. § 8057) provides that vessels of 20 tons or upwards, duly enrolled and having a license in force, and no others, shall be deemed vessels of the United States entitled to the privileges of vessels employed in the coasting trade or fisheries.

Section 4170 of the Revised Statutes (Comp. Stat. § 7751) provides that, whenever any vessel which has been registered is sold, the vessel shall be registered anew; otherwise, she shall cease to be deemed a vessel of the United States.

These statutes have been in force for many years, and have constituted a part of the fundamental law of the United States, created for the protection of its citizens, and to make sure that vessels enjoying the privileges and benefits of a vessel "floating the national flag" shall be owned only by such citizens. These statutes are not repealed by the act of 1920. It is urged by libelants that they have been modified, or nullified, by the act of 1920, and especially by subsection B (4), which reads as follows:

"The term 'vessel of the United States' means any vessel documented under the laws of the United States and *such vessel shall be held to continue to be so documented until its documents are surrendered with the approval of the board*" (the United States Shipping Board).

The contention is that, the Lincoln Land having been properly documented at the port of New York under the laws of the United States, it must be "held to continue to be so documented," there being no evidence tending to prove that its documents had been "surrendered with the approval of the board;" or, to state the proposition in another way, that the Lincoln Land did not cease to be a vessel of the United States by reason of the transfers of ownership, although neither of the new owners, the libelants or the Indian Transportation & Navigation Company, Inc., registered or enrolled the vessel anew. The language of subsection B (4) is certainly broad enough to give some support to this contention, and it was sustained in my first opinion; but upon reflection I am sure the better view is that the provisions regarding continuation of documentation apply only to vessels subject to a valid preferred mortgage and that the provisions of the ancient statutes, above referred to, are left unimpaired by the Ship Mortgage Act of 1920. This conclusion seems imperative in view of the provisions of subsection O (a), which reads as follows:

"Subsection O. (a) The documents of a vessel of the United States covered by a preferred mortgage may not be surrendered (except in the case of the forfeiture of the vessel or its sale by the order of any court of the United States or any foreign country) without the approval of the board. The board shall refuse such approval unless the mortgagee consents to such surrender."

If these provisions of subsection B (4) are not to be confined to vessels which at the time of conveyance are subject to a preferred mortgage, they would work a complete undermining of the whole structure of the vessel law of the United States. Outstanding documents

·would continue in force, regardless of the number of successive conveyances or of the citizenship of the successive owners. Only by so limiting these provisions can they be brought into harmony with the system of statutory law of long standing, which relates to vessels engaged in foreign and domestic commerce.

[3] The libelants concede that, if their mortgage is to have a preferred status under the Ship Mortgage Act, it must cover a vessel of the United States.

When the Lincoln Land was conveyed by the libelants to the Indian Transportation & Navigation Company, Inc., it had ceased to be a vessel of the United States, for the reason that it had not been registered or enrolled or licensed anew by the libelants in accordance with law; nor was it a vessel of the United States when the mortgage was given by the corporation to the libelants. The mortgage, therefore, was not one which carried with it the benefits or priorities of a preferred mortgage under the statute.

It would not be necessary to consider the question of whether the statute requires recording at the home port of the buyer rather than seller, were it not for the fact that statements contained in my earlier opinion do not stand in view of the construction which I am now persuaded should be put upon the provisions of subsection B (4) of the Ship Mortgage Act.

R. S. § 4192 (Comp. Stat. § 7778), provides in substance that a bill of sale, mortgage, or other instrument of conveyance of any vessel should be recorded "in the office of the collector of customs *where such vessel is registered or enrolled.*"

Ever since White's Bank v. Smith, 7 Wall. 646, 19 L. Ed. 211, it has been settled that this statute required the recording at the home port of the new owner; that is, the port where the vessel should be permanently documented by such owner. The construction which, in my earlier opinion, is placed upon subsection B (4), and which I now deem to be erroneous, required the conclusion that Congress had worked a change in the law as laid down in White's Bank v. Smith, supra, in that the later act required the instrument to be recorded at the port of last registry or enrollment. The Ship Mortgage Act of 1920, as I now read it, does not conflict with the provisions of R. S. § 4192, as interpreted by the court in White's Bank v. Smith, at least so far as they relate to the necessity of recording instruments of conveyance of vessels in the port determined by the residence of the new owner rather than in the port where it had been documented by the former owner.

So far as the provisions of R. S. § 4192, are inconsistent with the provisions of the Ship Mortgage Act of 1920, they are repealed.

White's Bank v. Smith is authority for the proposition that it is the port of permanent documentation rather than the port of temporary documentation that is contemplated by R. S. § 4192. Whether this proposition would hold true under the provisions of subsection C and the definitions of subsection B is not so clear. Subsection C requires the recording "at the port of documentation," and Congress has seen fit in subsection B to define the port of documentation as the port at which the vessel is documented in accordance with law. Subsection B

(2) defines the word "documented." Incorporating the definition of the word "documented" in B (3), the paragraph would read as follows:

"The term 'port of documentation' means the port at which the vessel is registered, enrolled or licensed, whether permanently or temporarily in accordance with law."

Inasmuch as the Lincoln Land was not registered, enrolled, or licensed, permanently or temporarily, at any port by the libelants, or by the Indian Transportation & Navigation Company, Inc., until some time after the mortgage had been given and recorded, it becomes unnecessary in this case to determine the extent to which the provisions of R. S. § 4192, have been modified in this respect by the Ship Mortgage Act.

I have in my opinions dealt only with the claim of the libelants as holders of a mortgage which they claimed to have a preferred status. I have not undertaken to dispose of the rights of the libelants as creditors, or rights of other intervening petitioners. I am leaving all questions relating to these rights until such time as the respective claims shall come on for consideration.